OPINION
The following appeal is from a judgment of the Lake County Court of Common Pleas, Juvenile Division, which denied appellant, the State of Ohio, from presenting the hearsay statements made by an alleged child victim to a social worker investigating claims that the child was sexually abused by appellee, Dustin M. (d.o.b. March 27, 1984) and his twin brother, Corry M. The state alleged that the hearsay statements were admissible pursuant to Evid.R. 803(4) and Evid.R. 807. For the reasons that follow, we affirm the judgment of the trial court.
The facts pertinent to this appeal are as follows. On August 21, 1997, a complaint was filed in the Lake County Court of Common Pleas, Juvenile Division, alleging that appellee was a delinquent child for committing the following sexual acts against a four (4) year old child: one count of rape, a felony of the first degree if committed by an adult in violation of R.C. 2907.02; and one count of gross sexual imposition, a felony of the fourth degree if committed by an adult, in violation of R.C. 2907.05. The state initially alleged that the above offenses occurred sometime on or between February 25, 1996 and May 6, 1996. The state later amended the complaint to allege that appellee committed the offenses sometime on or between February 25, 1996 and August 31, 1996. Appellee denied any involvement in the offenses as set forth in the complaints and the trial court subsequently appointed him counsel as well as a guardian ad litem.
On December 2, 1997, the trial court granted the state's request, without objection, to join the case against appellee with that filed against appellee's twin brother, Corry M. (Case No. 97 DL 1813, 98-L-033 on appeal), arising out of the same set of facts. Both cases proceeded to a bench trial on December 15, 1997.
At trial, appellant began its case-in-chief by eliciting testimony from Officer Mark Parisi of the Madison Township Police Department. After Officer Parisi explained his rather limited involvement in the case, the state called the alleged victim to the stand.
Prior to permitting the alleged child victim to testify in this matter, the trial court conducted an in camera hearing to determine if the child was competent to testify. At this hearing, the then five-year-old female child gave appropriate responses as to her surroundings as well as her ability to distinguish a lie from the truth. However, the child had difficulty expressing answers to the questions that were asked and many of her responses appeared in the transcript as the following: "(No verbal response.)"
The trial court made a preliminary determination that the child was competent to testify. However, the court expressed concerns with the child's ability to communicate based on the fact that the witness answered most of the questions with a "shake of the head." The court indicated that it would reserve further judgment into the child's competency to testify based on her ability to communicate verbally at trial.
Following the initial competency determination, the trial continued with the child's testimony. Under questioning by an assistant prosecutor, the child stated with whom she was currently living and noted that she used to live with the two juvenile defendants, Corry and Dustin. The child was unable to identify the two juveniles in the courtroom and the witness later explained that she was afraid "[b]ecause [she had] never been in court."
The assistant prosecutor then attempted to elicit details regarding the alleged acts of sexual abuse. The child initially responded that she did not want to tell her "secret," and later stated that she could not remember what she had told others in the past regarding the allegations of abuse. At that time, the prosecutor was given permission from the trial court to ask the witness leading questions. The child acknowledged that she did not like living with the two juvenile defendants. However, the child denied that they had ever done anything "mean" to her. The direct examination of the child continued as follows:
 "Q: Do you know — do you know what your private parts are? Do you know what those are?
"A: (No verbal response.)
 "Q: Qkay. Now, can you tell the Court, did anybody ever touch your private parts?
"A: Huh-uh.
"Q: No?
 "Assistant Prosecutor: Your Honor, I'm not going to ask any more questions.
"The Court: You have no further questions?
"Assistant Prosecutor: Nothing further at this time."
The state made no further attempt to elicit testimony from the alleged child victim. Instead, the prosecution focused its attention on obtaining the hearsay statements that the child made to others regarding the alleged sexual abuse.
Appellant then called Shelly Pomeroy to the stand. Ms. Pomeroy testified that she is a licensed social worker at the Lake County Department of Human Services. In September of 1996, she was assigned to check into a referral received by the department regarding the allegations of sexual abuse against the then four-year-old child victim.
Ms. Pomeroy first interviewed the child on September 24, 1996. At this initial meeting, Ms. Pomeroy interviewed the child alone and utilized body maps or anatomical drawings of a preschool female. Throughout their discussion, the child was able to identify the various body parts shown on the body maps and answered a series of questions as to the function of these body parts and whether anyone had "ever done something [the child] didn't like to [that] part." When Ms. Pomeroy's testimony turned to the nature of the disclosure made by the alleged victim, appellee objected asserting that the witness' testimony amounted to nothing more than inadmissible hearsay.
The state argued that the hearsay statements that the child made to Ms. Pomeroy were admissible for two reasons. First, appellant argued that the child's statements fell into an exception to the hearsay rule, set forth in Evid.R. 803(4), as a statement made for purposes of medical diagnosis or treatment. Second, appellant argued that the child's statements were admissible pursuant to a relatively new hearsay exception, set forth in Evid.R. 807, allowing for the admissibility of a child's out-of-court statement in certain circumstances involving allegations of abuse.
Based upon the limited evidence that had been presented by the state at that point, the trial court determined that Evid.R. 803(4) had no application to this case. However, the court held that Evid.R. 807 might apply.
Appellee argued that the state failed to give him proper notice, pursuant to Evid.R. 807(A)(4), of its intent to use the out-of-court statements made by the child to Ms. Pomeroy. Appellee argued that the state's failure to give proper notice prevented him from properly preparing a defense. The state asserted that it did not expect the child to refuse to testify at trial and that its only alternative was to seek the introduction of the out-of-court statements made by the child to Ms. Pomeroy. The trial court expressed concern over the state's failure to give the defense notice of its intent to present the hearsay statements of the child at trial according to rule. By agreement of the parties, this controversy was resolved and the court held that Ms. Pomeroy would not be permitted to testify at trial until such time as appellee could prepare a proper defense to the evidence the state sought to have admitted pursuant to Evid.R. 807.
Rather than continue the trial at that point, the trial court conducted a preliminary Evid.R. 807 hearing for the purpose of determining, in the future, whether the information provided by the alleged victim in this case to Ms. Pomeroy had particularized guarantees of trustworthiness as required under Evid.R. 807(A)(1). At the Evid.R. 807 hearing, Ms. Pomeroy testified as to her meetings with the alleged victim as well as the lack of suggestive procedures that were used during each interview. In addition to the body maps used at the initial interview on September 24, 1996, a second "doll interview" was conducted on September 30, 1996, by another social worker at the agency. On October 10, 1996, Ms. Pomeroy conducted a final "coloring book" interview with the child at her home.
Ms. Pomeroy acknowledged that during the three interviews, inconsistencies developed as to the alleged victim's accounts of abuse. During one of the interviews, the child began to describe inappropriate touching among several other members of the household. The social worker attempted to explore the specifics of these new "disclosures" until the child's "attention span began to dwindle." Ms. Pomeroy was unable to establish a time frame as to when the allegations of abuse occurred other than "anywhere from `96" when the juvenile defendants first came to live in the same household as the victim.
In the notes that Ms. Pomeroy took of her interviews with the alleged victim, she wrote that the child was "a little naive to the concept of the truth and was told this meant talking only about what really happened." Ms. Pomeroy did not explore if the child had a reason to make up the allegations against the two juveniles, but acknowledged that she did have concerns about possible coaching and warned the child's mother not to question the child in-between interviews.
Following the conclusion of the Evid.R. 807 hearing, the trial court permitted the state to present one more witness at trial whose testimony would not be dependent on its future evidentiary ruling regarding the admissibility of the child's out-of-court statements. The state called Lauren McAliley, a pediatric nurse at University Hospitals in Cleveland, who examined the alleged victim.
Ms. McAliley testified that she conducted a thorough physical examination of the child sometime toward the end of March 1998. Based on her examination, Ms. McAliley determined that the child was probably a victim of sexual abuse. However, the nurse could not reject other possible explanations for her findings with respect to the child. She further acknowledged that she had no evidence as to who was responsible for the alleged abuse. The witness also testified that she knew that the child had contact with an uncle whom the victim's mother accused of molesting the mother for a period of nine (9) years.
Following Ms. McAliley's trial testimony, the proceedings were continued until February 5, 1998, so that appellee would have adequate time to prepare for appellant's attempt at introducing the out-of-court statements of the alleged child victim pursuant to Evid.R. 807. The trial continued at that time with the state attempting to present the child's hearsay statements that were made to Ms. Pomeroy. Appellee again objected to the admission of such evidence as inadmissible hearsay. After a lengthy discussion by the parties, the trial court determined that the evidence was not admissible pursuant to Evid.R. 807. In making its determination, the trial court noted that the victim denied at trial that anyone "ever" touched her "private parts." The court further noted that Ms. Pomeroy, herself, expressed concerns regarding the truthfulness of the child's statements, the child's inconsistent statements as to how the incident occurred, and the possibility that the child had been coached regarding what to say at the interviews. The trial court ultimately held that the case "cries out" for cross-examination of the alleged child victim.
Following the above ruling, appellant advised the trial court that, pursuant to Juv.R. 22(F), Crim.R. 12(J), and R.C. 2945.67, the court's ruling had rendered the state's proof of the pending charges so weak in its entirety that any reasonable possibility of effective prosecution was destroyed. The state subsequently filed a timely notice of appeal from the trial court's judgment entry. This was followed on February 12, 1998, by appellant filing in this court a motion for leave to appeal. No brief in opposition to appellant's motion was filed and on May 1, 1998, this court granted appellant's motion for leave to appeal. Appellant now asserts the following two assignments of error:
 "[1.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE STATE WHEN IT EXCLUDED EVIDENCE PRESENTED PURSUANT TO EVID.R. 803(4).
 "[2.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE STATE WHEN IT EXCLUDED EVIDENCE PRESENTED PURSUANT TO EVID.R. 807."
In the first assignment of error, appellant argues that the trial court erred in failing to permit Ms. Pomeroy from testifying as to the statements made by the alleged child victim. Specifically, appellant argues that the statements made to this social worker by the victim were admissible under Evid.R. 803(4) for purposes of medical diagnosis or treatment. That rule provides as follows:
 "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"* * *
 "(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
In State v. Jett (Mar. 31, 1998), 97-P-0023, unreported, at 28, this court noted that while most hearsay declarations offered into admission under Evid.R. 803(4) will involve situations where a patient seeks diagnosis or treatment of a physical or psychological condition from a medical doctor, the rule does not require that such a declaration necessarily be made to a physician. Indeed, a statement may fit within the scope of this hearsay exception if it is directed to other physical and mental health professions including nurses, psychologists, and therapists. Id. at 28-29. Appellate courts have previously recognized that statements made to a social worker may fit within this exception. See, e.g., Presley v. Presley (1990),71 Ohio App.3d 34, 38, citing State v. Miller (1988),43 Ohio App.3d 44, 47. In the present case, appellant asserts that the statements made by the alleged child victim to Ms. Pomeroy, a licensed social worker, were for the purposes of determining if the child should be removed from her current environment and in need of physical and/or psychological treatment.
Traditionally, the rationale behind the hearsay exception found in Evid.R. 803(4) stemmed from the "selfish interest rationale" or the belief that a person was motivated to tell the truth when seeking medical diagnosis or treatment because the person's well being may depend on expressing truthful information to the medical professional. Jett at 26; State v. Dever
(1992), 64 Ohio St.3d 401, 407. It is this truthful motivation that makes the declarant's statements inherently trustworthy.
The Supreme Court of Ohio previously held that if a child's statements were not motivated by his or her own desire to obtain medical diagnosis or treatment, then the statements were not admissible under Evid.R. 803(4). State v. Boston (1989), 46 Ohio St.3d 108,121. More recently, however, the Court has revisited this area and concluded that a child's out-of-court statements relating to medical diagnosis or treatment are not automatically untrustworthy simply because the child was not personally motivated to seek care, but rather, because of the child's tender years, directed to seek treatment by an adult. Dever at 409-410. The Dever court stated as follows:
 "Boston gives the impression that if the slightest possibility exists that the child's statements were not motivated by her own desire to obtain medical diagnosis or treatment, the statements may not come in as an Evid.R. 803(4) exception. We believe that it is not necessary to apply that approach to every instance in which a child of tender years makes a statement in the course of diagnosis and treatment. While we recognize that a young child would probably not personally seek treatment, but would generally be directed to treatment by an adult, we do not find that the child's statements relating to medical diagnosis or treatment are always untrustworthy for that reason alone. Once the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present. That is to say, the initial desire to seek treatment may be absent, but the motivation certainly can arise once the child has been taken to the doctor. Absent extraordinary circumstances, the child has no more motivation to lie than an adult would in similar circumstances. Everyday experience tells us most children know that if they do not tell the truth to the person treating them, they may get worse and not better." Id. at 409-410.
Thus, pursuant to Dever, statements made by a child to a medical professional are not automatically excluded simply because the child did not possess the initial motivation to seek diagnosis or treatment, but rather were directed there by an adult. Once at the medical professional's office, however, it must be established that the child's statements were made for the purpose of medical diagnosis or treatment.
A trial court has broad discretion in determining whether a child's out-of-court declaration is admissible as a hearsay exception. Dever at 410. In making this determination, a trial court must consider the circumstances surrounding the child's out-of-court statement to determine if it was made to a medical professional for the purposes of diagnosis or treatment. Id.
In the present case, the state offered absolutely no evidence from which this court can discern the child's motivation for participating in the interview with Ms. Pomeroy. The child was never told the purpose of her visit with the social worker and Ms. Pomeroy herself testified that she was only conducting an intake interview to investigate allegations of abuse. There was absolutely no evidence from which to establish that the purpose of this interview was designed to provide the child with medical or psychological assistance, let alone the child's understanding that this was the purpose of her conversation with Ms. Pomeroy. Furthermore, while the white lab coats and medical instruments traditionally seen at a doctor's office might signal in a child's mind the seriousness of the situation and the necessity to tell the truth, such as existed in Dever, there is no indication that a typically dressed social worker carrying an anatomically correct doll would evoke a similar reaction in the eyes of a child.
As previously discussed, the basis for the medical diagnosis and treatment exception to the hearsay rule is the belief that a person will tell a medical professional the truth in order to benefit his or her own course of treatment. In fact, this truthful motivation did not exist in this case as acknowledged by Ms. Pomeroy when she noted that the child seemed "a little naive as to the truth" during her interview. Under these circumstances, the trial court properly determined that the alleged victim's out-of-court statement was inadmissible and not subject to the hearsay exception as set forth in Evid.R. 803(4). Appellant's first assignment of error is without merit.
In the second assignment or error, appellant argues that the trial court erred in refusing to admit the alleged victim's statements pursuant to Evid.R. 807. Appellant asserts that the child was not reasonably obtainable to testify at trial for the state and that the totality of the circumstances surrounding her statement to Ms. Pomeroy contained particularized guarantees of trustworthiness.
Evid.R. 807 provides, in pertinent part, as follows:
 "(A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child or describing any act of physical violence directed against the child is not excluded as hearsay under Evid.R. 802 if all of the following apply:
 "(1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.
 "(2) The child's testimony is not reasonably obtainable by the proponent of the statement.
 "(3) There is independent proof of the sexual act or act of physical violence.
 "(4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness.
 "(B) The child's testimony is `not reasonably obtainable by the proponent of the statement' under division (A)(2) of this rule only if one or more of the following apply:
 "(1) The child refuses to testify concerning the subject matter of the statement or claims a lack of memory of the subject matter of the statement after a person trusted by the child, in the presence of the court, urges the child to both describe the acts described by the statement and to testify."
There is no dispute that the state eventually complied with the notification requirement as set forth in Evid.R. 807(A)(4). Evidence was also presented by the state through the testimony of Ms. McAliley, before the trial court's Evid.R. 807 determination, to establish some independent proof of the sexual act pursuant to Evid.R. 807(A)(3). Arguably, the state failed to satisfy the provisions of Evid.R. 807(A)(2) and Evid.R. 807(B)(1) as no one, other than the assistant prosecutor, attempted to elicit testimony from the alleged victim as to the acts described in the out-of-court statement. Indeed, the child did eventually testify, but indicated that no one "ever" touched her in an inappropriate manner. However, it is unnecessary to formally determine this issue because it is clear that the trial court did not err in failing to admit the hearsay statement pursuant to Evid.R. 807(A)(1).
As with other evidentiary issues, trial courts are vested with discretion in determining whether to admit evidence pursuant to Evid.R. 807. State v. Kobza (Dec. 22, 1995), Lake App. No. 94-L-086, unreported, at 4. In this case, the trial court determined that the child's hearsay statements to Ms. Pomeroy did not provide particularized guarantees of trustworthiness based on the social worker's admissions that the alleged victim may not have been truthful as well as concerns that the child may have been coached into making false allegations against appellee. These concerns are adequately borne out in the record on appeal and we cannot hold that the trial court abused its discretion under these circumstances. Appellant's second assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed.
 _________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., NADER, J., concur.