OPINION
On October 22, 1998, following unanswered phone calls, Defendant-Appellant Eugenia Reed ("Reed") went to her husband, Winston Reed's ("Winston's") home to find out if he planned to pick up their grandson. The couple had lived in separate residences for six years, but remained married. In fact, Reed would occasionally spend the night at her husband's residence. After receiving no response from knocking on both the front and back doors, Reed entered the back door of the home. She proceeded to the bedroom and found Winston in bed with another woman, Alberta Taylor. Reed began cursing at Winston and pounding on his chest with her fists.
Taylor testified that Reed left the bedroom and headed for the kitchen, while Winston headed toward the bathroom. When Reed returned, she had a knife in her hand, and Winston ran into the bathroom to avoid her. Nonetheless, Reed, who weighed approximately two hundred pounds, was able to push her way into the bathroom against Winston, who weighed just over one hundred pounds. As she entered the bathroom, Reed stabbed Winston in the shoulder, severing an artery. Reed called 911 and then assisted Alberta in trying to stop the bleeding. Winston died at the scene from blood loss.
There was a great deal of testimony detailing abuse Winston inflicted on Reed throughout their marriage. In addition, testimony revealed that Reed had previously been abused by her father and her first husband. As a result, psychologists testified regarding battered women's syndrome, and its potential to cause disassociation and legal insanity. The jury ultimately found Reed guilty of the lesser included offense of involuntary manslaughter, and she was sentenced to ten years in prison. Reed has appealed this verdict raising the following assignments of error:
 I. Appellant was denied a fair trial due to a pattern of prosecutorial misconduct.
 II. The court erred in admitting non-probative cumulative and highly prejudicial material into evidence.
 III. The court erred when it failed to grant mistrials following repeated instances of prosecutorial misconduct.
 IV. The court erred by giving an instruction that statements made to the court psychologist could not be considered for the truth of the matters stated.
 V. All of the errors committed at trial combined to deprive Appellant of a fair trial.
 I, III
We will consider the first and third assignments of error together as they are interrelated. In her first assignment of error, Reed alleges several different incidents of prosecutorial misconduct, which together denied her a fair trial. As a result of the misconduct, Reed argues in her third assignment of error that the trial court should have granted a mistrial.
When determining whether the trial court's decision on a motion for mistrial was proper, great deference is given to the trial court's discretion, "in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." State v. Stanley (1997),121 Ohio App.3d 673, 699, citing State v. Glover (1988), 35 Ohio St.3d 18,19. The appellate court may not reverse the trial court's decision unless it abused its discretion to the extent that the defendant was materially prejudiced. Id.
Our decision of whether the motions for mistrial were properly overruled depends on whether prejudicial prosecutorial misconduct occurred during the trial. "The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Lott (1990),51 Ohio St.3d 160, 165. When conducting our analysis, we must focus on the fairness of the trial, not the culpability of the prosecutor. Id. at 166. Reed argues five separate acts by the prosecutor constituted misconduct.
 (A)
During cross examination of Reed's son, Michael Miller, the following exchange occurred:
 Q. And did you think it was wrong what he did to your mother?
A. Yes, I did.
Q. Did it upset you?
A. Yes.
 Q. And was it just because she was your mother or because you don't believe that a man should ever hit a woman?
A. Well, I believe that a man shouldn't hit a woman.
Q. But yet you've been arrested —
MR. RION: Objection.
BY MS. FRYDMAN:
Q. — for domestic violence —
MR. RION: Objection.
BY MS. FRYDMAN:
Q. — for kicking and slapping your girlfriend?
MR. RION: Your Honor, I object.
A side-bar and then chambers conference immediately followed this exchange before the witness had a chance to answer the question. The trial court sustained the objection to the question, but overruled Reed's motion for a mistrial.
Initially, we agree that the question was improper, and the trial court correctly sustained the objection. However, we fail to see how this rises to the level of prosecutorial misconduct. The witness, Michael Miller, testified only regarding the abuse endured by his mother at the hands of the victim. There were several other witnesses who testified to this abuse also. So, even if the question damaged his credibility, which is not clear, there was cumulative testimony of the abuse, so it was not prejudicial. In any event, simply asking the question did not substantially affect the rights of the accused, as is required to find prosecutorial misconduct. See, Lott, 51 Ohio St.3d, at 165.
 (B)
The other four incidents of alleged misconduct occurred during closing arguments. Initially, we recognize that the prosecutor is entitled to a certain degree of latitude in her closing argument. Lott,51 Ohio St.3d, at 165. After viewing the argument in its entirety, the trial court, in its sound discretion, must decide whether misconduct has occurred. State v. Ballew (1996), 76 Ohio St.3d 244, 255. If it is apparent from the circumstances of the particular case that the court's discretion has not been abused, an appellate court will not interfere. State v. Maurer (1984), 15 Ohio St.3d 239, 269.
Reed alleges the following represents an improper comment on her failure to testify made by the prosecutor during closing argument:
 * * *you must find that the provocation was sufficient to arouse the passion of an ordinary person beyond the power of his control, and, and, you must find that the Defendant was actually under the influence of sudden passion or sudden fit of rage, and, and, you have to find — not or, or not some, or not part of these elements, every single one of them — and, it incited her into using deadly force, and no one has said that that was what she did on that day, least of all Gena. She did not mean to kill him.
Following the defense objection, the prosecutor stated:
 * * *she has not made this burden because she was not incited into using deadly force. Listen to her videotape. Listen to what she said. She said she didn't mean to kill him. She said it was an accident.
Further, the trial court advised the jury that any reference to what Reed said referred to the videotaped statement that was admitted into evidence. Finally, the court instructed the jury not to consider the fact that Reed did not testify.
The test for prosecutorial misconduct in referring to a defendant's failure to testify is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." State v. Webb (1994), 70 Ohio St.3d 325, 328. Taking the excerpt in context, as it was presented to the jury, it does not appear that the prosecutor was attempting to comment on Reed's failure to testify. Instead, she was pointing out that statements made by Reed on the videotape recorded by the police did not support the elements of a lesser included offense. The jury would not naturally or necessarily assume the prosecutor was commenting on Reed's failure to testify. Accordingly, we find no merit to the claim this portion of the closing argument constituted misconduct.
 (C)
Next, Reed argues that continuing objections by the prosecutor during the defense counsel's closing argument signified misconduct. The prosecutor objected four times during defense counsel's closing, two of which were sustained, two overruled. Although it may have been advisable for the prosecutor to have refrained from objecting so much, there is no blanket rule prohibiting the prosecutor from interrupting defense closing with valid objections. After reviewing all four objections raised by the prosecutor, we find that all had a valid basis and were not designed merely to interrupt defense counsel. See, State v. Stinson (1984),21 Ohio App.3d 14, 17. Further, Reed has not established any prejudice resulting from the interruptions. See, State v. Middlebrook (May 9, 1991), Franklin App. No. 90AP-299, unreported, at p. 2. Consequently, we do not find the objections amounted to misconduct.
 (D)
Reed's next allegation involves emotional argumentation by the prosecutor during her closing remarks. As stated previously, the prosecutor is allowed a certain degree of latitude during closing argument. Lott, 51 Ohio St.3d, at 165. Although emotional argumentation is improper, reversal is only warranted when the argument in its entirety denied the defendant a fair trial. State v. Pershin (1988),62 Ohio App.3d 405, 408; State v. Simpson (Sept. 30, 1994), Lake App. No. 93-L-014, unreported, at p. 15. Reed cites State v. Thompson to indicate that appealing to jurors' emotions is strongly opposed. (1987),33 Ohio St.3d 1, 15. However, Thompson made this statement regarding the penalty phase of a death penalty trial. Id. Emotional argumentation during the penalty phase of a death penalty case is much more prejudicial as it prevents jurors from dispassionately weighing the aggravating circumstances against the mitigating factors and could influence a harsher penalty.
The following is the statement by the prosecutor that Reed complains of:
 Poor, poor, poor Gena Reed. How sad. How tragic. What about Winston Reed? Mr. Rion asked you to put yourself in her shoes, seated here, living, breathing, her loved ones behind her. Put yourself in his shoes, Winston Reed (indicating). No longer living, no longer breathing, his family grieving in the back of the courtroom.
However, this immediately followed:
 And forget about that. Because remember what we said in voir dire? We can't let our sound judgment be corrupted, be interrupted, be affected in any way by sympathy or pity or emotion * * *.
Considering this statement in its entirety, we do not find it to be prejudicial emotional argumentation. In fact, the prosecutor asked the jurors to disregard emotion when deciding the case. We do not find this statement constitutes misconduct.
 (E)
Reed's final claim of misconduct stems from the prosecutor's statement that the blood found on a ladies' watch at the scene was the victim's blood. First, we must point out that Reed did not object to this statement by the prosecutor and has consequently waived all but plain error. State v. Green (2000), 90 Ohio St.3d 352, 373. Under this standard, reversal is only warranted in an exceptionally rare case where it is necessary to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. This is not such a case.
The prosecutor is permitted to draw reasonable inferences from evidence presented at the trial and discuss those inferences during closing argument. State v. Treesh (2001), 90 Ohio St.3d 460, 466. A ladies' watch was found at the scene with blood on it. Testimony at trial revealed that the only person injured at the scene producing a significant amount of blood was the victim, Winston Reed. It was reasonable for the prosecution and the jury to infer that the blood on the watch was Winston's. Moreover, when viewing the closing argument and the case in its entirety, the prosecution's statement that the blood on the watch belonged to Winston had very little relevance.
Based on the foregoing discussion of all of Reed's claims of prosecutorial misconduct, we find that none of them amounted to prejudicial error. Consequently, the trial court did not abuse its discretion in denying her motion for a mistrial. Reed's first and third assignments of error are overruled.
 II
In her second assignment of error, Reed argues that the trial court improperly allowed cumulative and prejudicial evidence only offered to display a large amount of blood to the jury. The evidence contested includes photos of the victim's body, photos of the bathroom where the stabbing occurred, and the sweater Reed was wearing when the stabbing occurred.
The trial court has broad discretion in determining whether to admit or exclude evidence. State v. Hopfer (1996), 112 Ohio App.3d 521, 555, citing State v. Sage (1987), 31 Ohio St.3d 173, 182 (other citations omitted). When considering whether photographs are admissible under Evid.R. 403(A), we must determine whether "the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant." State v. Morales (1987), 32 Ohio St.3d 252,257. Only in capital murder cases is this standard raised to a higher level which includes prohibiting repetitive or cumulative photographs.
Furthermore, Reed did not object to the admission of the photographs of the victim's body. Therefore, she has waived all but plain error on their admission. State v. Lindsey (2000), 87 Ohio St.3d 479, 482. Consequently, Reed has the burden to show that but for the admission of these photographs, the outcome of the trial would clearly have been different. Id. There were only six photographs which depicted any part of the victim's body, all of which had probative value. There were two different views to explain his location in the house, a photograph from his chest up, which depicted the wound as well as other relevant evidence, a close-up of the wound, a shot of his feet showing blood on the bottom, and then a photograph of the living room including a partial view of his head. We do not find the admission of these photographs to have been prejudicial enough to alter the outcome of the trial.
Reed also objected to three photographs of the bathroom where the stabbing occurred, which displayed a great deal of blood. Each of these photographs were at different levels of focus. Moreover, the supreme court has found that photographs of blood stains do not have the same shock value as a photograph of a corpse and therefore should not be classified as "gruesome." State v. DePew (1988), 38 Ohio St.3d 275, 281. After examining all of the photographs, the trial court found that the probative value was not substantially outweighed by any prejudice, and therefore admitted them into evidence. We have also examined the photographs and do not find their admission to be an abuse of discretion.
Reed further challenges the admission and the display of her sweater during the trial. After identifying the exhibit, the prosecutor asked the witness to hold it up and walk in front of the jury. Specifically, she said, "If you'll walk back this way. You'll have a great view of it now if you hold it that way." After this display, the prosecutor informed the court that she was going to leave it out in case defense counsel needed it on cross. Although the prosecutor could have used better judgment in the way the sweater was presented at trial, it was not an abuse of discretion to allow it into evidence. The sweater was probative to verify Ms. Taylor's version of events. Moreover, if defense counsel did not want the sweater left out during cross, he could have asked the prosecutor to put it away when she made the comment to the court.
Based on the foregoing, Reed's second assignment of error is overruled.
 IV
Next, Reed contests the following jury instruction concerning statements made during her psychological examinations:
 You have heard testimony from psychologists regarding statements made to them by the Defendant at the time of their evaluations. These statements were offered as one of the [bases of their findings] regarding the issue of the Defendant's insanity at the time of the alleged offenses. Statements of the Defendant made to a psychologist may not be used or considered by you as substantive evidence of the crimes charged in the indictment or any lesser included offense upon which you will be in [sic] instructed to consider.
This instruction tracks the language of R.C. 2945.371(J), which prevents the use of statements against a defendant that were made during both court-ordered and independent psychological examinations. See, also, R.C. 2945.371(B) (providing for defendant's use of independent examiner). The statute specifically prohibits the use of statements on the issue of guilt for the crime, but allows the professional to testify regarding insanity issues. Reed argues that although the statements cannot be used against her, they should be considered if they support her theory of the case. We disagree.
The prohibition in the statute is necessary because although the statements made to an examiner by the defendant are hearsay, damaging statements would otherwise be admissible under Evid.R. 804(B)(3), statement against interest, if the statute did not exist. However, statements a defendant made to the examiner that are not statements against interest are inadmissible hearsay. The statute cannot be used by the defendant to admit only those statements that support her innocence or the elements of a lesser included offense. This essentially would allow the defendant to "testify" without being subject to cross examination. Again, the only statements made by a defendant to an examiner which are admissible are those statements used to help form the examiner's opinion of the defendant's sanity or competency to stand trial. R.C. 2945.371(J).
Reed argues that the statements supporting her theory of the case would be admissible under Evid.R. 803(4), statements for purposes of medical diagnosis or treatment. This hearsay exception developed under the belief that an individual seeking medical or psychological treatment or diagnosis would be motivated to tell the truth since his or her well-being may depend on it. In re Corry M. (1999), 134 Ohio App.3d 274,281, citing State v. Dever (1992), 64 Ohio St.3d 401, 407. This rationale is inapplicable to a psychological evaluation performed for the purpose of determining legal insanity as a defense in a criminal trial. Certainly, the defendant could not be possessed of the same motivation to tell the truth, because the individual performing the evaluation would not be treating or "diagnosing" a psychological disorder. Instead, the only purpose of the evaluation would be to form an opinion as to the legal sanity or insanity of a defendant charged with a crime.
The only witness whose testimony could fall under the exception in Evid.R. 803(4) would be Martha Davis, the counselor who met with Reed over a period of time in the early 1990's. We agree that Ms. Davis' testimony was admissible under Evid.R. 803(4), and it was properly admitted. Reed argues the instruction as given negated her testimony. We disagree.
First, the instruction as given was inapplicable to Ms. Davis' testimony because she did not make "a finding regarding the issue of the Defendant's insanity at the time of the alleged offenses." The instruction specifically limited only the testimony of psychologists who evaluated Reed's sanity or insanity, which did not include Ms. Davis. Moreover, the pertinent testimony only lasted approximately three pages and did not reveal any specific statements by Reed, only cumulative testimony regarding her abuse and her feelings about the marriage. Even if the instruction stated above confused the jurors and caused them not to consider Ms. Davis' testimony regarding Reed's statements, there would be no resulting prejudice due to the cumulative nature of her testimony.
Based on the foregoing, we do not find the instruction was improper. Therefore, Reed's fourth assignment of error is overruled.
 V
In her final assignment of error, Reed alleges that the cumulative effect of all the errors resulted in denying her a fair trial. When considered together, separately harmless errors may violate a defendant's right to a fair trial. State v. Madrigal (2000), 87 Ohio St.3d 378, 397. However, in order to determine if "cumulative" error is present, we must find that multiple errors were committed at trial. Id. at 398. After all, a defendant is guaranteed a fair trial, not a perfect one. Lott,51 Ohio St.3d, at 166.
Upon review, we found only one potential error that we determined was harmless, the prosecutor's questioning of a defense witness about a prior bad act. This single harmless error certainly does not amount to cumulative error. Accordingly, Reed's fifth assignment of error is overruled.
FAIN, J., and GRADY, J., concur.