Dennis DAVISON, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–13877.

Supreme Court of Alaska.

Aug. 10, 2012.

Rehearing Denied Aug. 30, 2012.

Brooke Berens, Assistant Public Advocate, and Rachel Levitt, Public Advocate, Anchorage, for Petitioner.

Kenneth M. Rosenstein, Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Respondent.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

STOWERS, Justice.

## I. INTRODUCTION

Dennis Davison was convicted of sexually abusing his fourteen-year-old daughter, R.D.[1] At trial, the doctor who performed a Sexual Assault Response Team (SART) examination of R.D. testified to statements R.D. had made during the examination. Davison argues that the doctor's testimony regarding R.D.'s statements was not admissible under Alaska Evidence Rule 803(4), the hearsay exception for statements made for the purpose of medical treatment, because the examination was conducted primarily to gather evidence against him and not for purposes of medical treatment. Davison also argues that the trial court erroneously included in his presentence report statements R.D. had made during the sexual assault exam that

---

1. We use initials to protect the privacy of the minor.

pertained to offenses he was charged with but acquitted of at trial.

We agree that the doctor's hearsay testimony was not admissible under Rule 803(4), but hold this error was harmless with respect to Davison's conviction. We remand the sentencing issue to the court of appeals to consider whether the hearsay statements were sufficiently verified for inclusion in Davison's presentence report.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 2007, Dennis Davison and his wife Tracy lived in Elim with their four daughters. Their oldest daughter, R.D., was 14 years old. Tracy was away from Elim on March 9, 2007. When Tracy returned home on March 10, R.D. told Tracy that Davison had sexually assaulted her while Tracy was away.

Tracy immediately contacted the village physician's assistant, who then contacted the Alaska State Troopers. Trooper Honie Abercrombie telephoned Tracy and Tracy repeated R.D.'s sexual assault allegations to the trooper.

R.D. spent that night at the village clinic with her mother and sisters. She received some basic medical attention while there.

The next day, Trooper Abercrombie arranged a SART examination at the hospital in Nome. The trooper met the family at the Nome airport and took them to the hospital.

At the hospital, Dr. Deborah Flint–Daniel conducted the SART exam. Three other people were present during the exam: Trooper Abercrombie, a nurse, and an advocate from the Bering Sea Women's Group. Dr. Flint–Daniel explained that Trooper Abercrombie had requested the SART exam: "[T]he exam . . . . has to be requested by this officer here. You guys have already talked about that and she's asked that we go ahead and do this exam today." The doctor also read R.D. a consent form explaining that the information gathered from the medical exam would be used for evidentiary purposes:

[H]ere, let me read [this consent form] with you. That you authorize [the hospital] to give information to—in this case it would be Alaska State Troopers. . . . And the information will be used or disclosed for an investigation and prosecution of any crime that may have been committed. . . . It says you understand that the health care providers are required to report to law enforcement agencies cases in which medical care is sought when injuries have been inflicted upon any person in violation of state law. . . . I understand that a separate medical examination for evidence of sexual assault . . . can be conducted by a health care provider to discover and preserve evidence of assault. If conducted the report of the examination and any evidence obtained will be released to law enforcement authorities. I understand that the exam may include the collection of reference specimens. . . . Knowing this, I consent or give permission to a medical examination for evidence of sexual assault.

The form expressly described the examination as a forensic exam: "In order to facilitate services it is understood that the agencies involved in the team will be exchanging information about the forensic examination . . . and the interview."

Dr. Flint–Daniel then proceeded to collect a verbal history from R.D. R.D. had a very difficult time answering questions about the sexual assault and responded with silence to many of the doctor's questions.[2] After several unsuccessful attempts to question R.D. about the assault, Trooper Abercrombie offered to relay what Tracy had told her about the incident. After the trooper told the doc-

---

2. The following exchange is a representative sample from the transcript:

Q: And then what happened? You said you went to bed what, 1:30 or something like that?
A: (inaudible)
Q: Then what happened?
(silence)
Q: Did you (indiscernible)?
(silence)
Q: Who shares your bedroom with you?
(silence)
Q: Did someone come into your room?
(silence)
Q: Hard to talk about?
(silence)
Q: What can you tell me [R.D.]?
A: I don't know.

tor what Tracy had reported, Dr. Flint–Daniel asked R.D., "[I]s that pretty much on target?" R.D. responded, "Yeah." Dr. Flint–Daniel then proceeded to ask R.D. a series of more detailed yes or no questions about the incident, to which R.D. responded. Later, over Davison's objection at trial, Dr. Flint–Daniel summarized what R.D. had told her: someone came into her room while she was sleeping, touched her breasts and genitals, licked her genitals, and penetrated her vagina with a finger and penis.

After concluding the verbal history portion of the SART exam, Dr. Flint–Daniel performed a physical exam. The physical exam showed that R.D. had two healing abrasions in her genital region. The doctor also obtained swabs from inside her mouth and genital area to test for various sexually transmitted diseases.

### B. Proceedings

The State charged Davison with three counts of first-degree sexual assault, three counts of first-degree sexual abuse of a minor, and three counts of incest.[3] The three counts for each type of crime corresponded to digital, oral, and penile penetration.

At trial, in response to leading questions, to which no objection was made, R.D. testified to penile penetration. She first affirmed that she had told her mother that Davison "put himself inside [her]." When asked if what she said to her mother was true, she responded, "Yes." She then affirmed that she had told Dr. Flint–Daniel that Davison "put his penis inside [her] vagina." When asked if what she said to the doctor was true, she responded, "Yes." R.D. also testified that she did not remember whether she had told the doctor that Davison performed oral sex on her or inserted his fingers into her vagina.

The State called Dr. Flint–Daniel as a witness and asked her to summarize the medical history that R.D. provided during the SART exam. Davison objected, arguing that this testimony did not fit within the medical treatment hearsay exception under Alaska Evidence Rule 803(4). The trial court allowed Dr. Flint–Daniel to testify to R.D.'s statements, noting that Davison had an "ongoing objection" to her testimony. Dr. Flint–Daniel testified that R.D. said her assailant had penetrated her digitally, orally, and with his penis. The doctor also testified that her physical exam of R.D. revealed two healing abrasions in the genital region and that the results of the physical exam were consistent with R.D.'s report of sexual assault. Finally, Dr. Flint–Daniel testified that "[l]ab work is routinely obtained," but the lab work she obtained "was sent away" and she had "not seen those reports."

The jury convicted Davison of one count each of first-degree sexual assault, sexual abuse of a minor, and incest. All of the verdicts were based on penile penetration. The jury acquitted Davison of the charges based on digital and oral penetration. The trial court merged the convictions because they were all based on the same underlying act of penetration.

The trial court sentenced Davison to 30 years of imprisonment with 10 years suspended. The presentence report included a summary of the SART exam, including R.D.'s statements alleging digital and oral penetration. Davison objected to the inclusion of these statements in the report, arguing that the jury had acquitted him of all counts related to digital and oral penetration. The trial court declined to redact the statements.

Davison appealed, arguing in part that the trial court erroneously: (1) admitted Dr. Flint–Daniel's testimony regarding statements that R.D. made during the SART exam; and (2) failed to redact R.D.'s statements regarding digital and oral penetration from the presentence report.[4] The court of appeals affirmed.[5] We granted Davison's petition for hearing on these issues.

---

**3.** Alaska Statute 11.41.410(a)(1) (first-degree sexual assault); Alaska Statute 11.41.434(a)(2) (first-degree sexual abuse of a minor); Alaska Statute 11.41.450(a)(1) (incest).

**4.** *Davison v. State*, Mem. Op. & J. No. 5589, 2010 WL 1729170, at *1, 3–5 (Alaska App., Apr. 28, 2010).

**5.** *Id.* at *6.

## III. STANDARD OF REVIEW

 We review the trial court's admission of evidence for an abuse of discretion.[6] Erroneously admitted evidence is harmless if it "did not appreciably affect the jury's verdict." [7] We also review a trial court's decision to include disputed factual allegations in a presentence report for an abuse of discretion.[8]

## IV. DISCUSSION

### A. Hearsay Statements From The SART Exam Were Not Admissible As Statements Made For The Purpose Of Medical Diagnosis Or Treatment, But The Error Was Harmless As To The Conviction.

 Hearsay—an out-of-court statement offered to prove the truth of the matter asserted in that statement—is not admissible at trial.[9] Alaska Evidence Rule 803(4) creates an exception to this rule for statements made for the purpose of medical diagnosis or treatment:

> The following are not excluded by the hearsay rule. . . .
>
> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

This exception is based on the rationale that patients have a strong motivation to be truthful when their own health and well-being are at stake, and that a fact reliable enough for a physician to base treatment on is also reliable enough to be admitted as evidence.[10] In accordance with this rationale, we adopt the two-part test articulated by the court of appeals in *Sluka v. State* to determine whether this hearsay exception applies to a particular statement: " '[F]irst is the declarant's motive consistent with the purpose of the rule; and second, is it reasonable for the physician to rely on the information in diagnosis and treatment.' " [11]

Davison argues that the circumstances surrounding R.D.'s SART exam demonstrate her statements were not made for the purpose of obtaining medical treatment. The circumstances he relies on include the following: (1) Dr. Flint–Daniel emphasized the exam's evidence-gathering purposes when explaining the process to R.D.; (2) Trooper Abercrombie arranged the exam and actively participated in questioning R.D.; (3) R.D. had already received some medical treatment at the clinic in Elim; and (4) Dr. Flint–Daniel did not prescribe any additional treatment or examine the results of the lab tests that she ordered.

The State argues that Davison's objection at trial was insufficient to preserve this issue for review on appeal. The State also argues that other circumstances demonstrate R.D. understood the medical purpose of the SART exam—namely, the exam took place in a hospital with a doctor—and that none of the circumstances Davison relies on establish her motivation in answering Dr. Flint–Daniel's questions was for a purpose other than seeking medical treatment.[12]

---

6. *Jeffries v. State,* 169 P.3d 913, 924 (Alaska 2007).

7. *Id.* (quoting *Love v. State,* 457 P.2d 622, 634 (Alaska 1969)).

8. *See Cragg v. State,* 957 P.2d 1365, 1366 (Alaska App.1998).

9. Alaska R. Evid. 801(c), 802.

10. *See Sluka v. State,* 717 P.2d 394, 399 (Alaska App.1986) ("Statements made to facilitate medical diagnosis and treatment are likely to be truthful and reliable because declarants are unlikely to fabricate where their own health and wellbeing is at stake; and a fact reliable enough to serve as a basis for diagnosis and treatment is also reliable enough to escape hearsay proscription.") (citing *United States v. Iron Shell,* 633 F.2d 77, 83–84 (8th Cir.1980)); *see also* Commentary to Alaska Rule of Evidence 803(4) ("Even those few jurisdictions which have shied away from generally admitting statements of present condition have allowed them if made to a physician for purposes of diagnosis and treatment in view of the patient's strong motivation to be truthful.").

11. *Sluka,* 717 P.2d at 399 (quoting *Iron Shell,* 633 F.2d at 84).

12. The State also argues that R.D.'s statements from the SART exam were not hearsay because her statements regarding penile penetration

### 1. Davison properly preserved his objection.

To preserve an issue for appeal, a party must clearly state the grounds for his objection "so that the [superior] court may intelligently rule upon the objection."[13] The State argues that Davison failed to object on the specific basis that R.D.'s statements were not made for the purpose of obtaining medical treatment, and that this deprived the State of the opportunity to lay a specific foundation on that issue at trial.

Davison objected to Dr. Flint–Daniel's testimony on the grounds that R.D.'s statements from the SART exam were not admissible as statements made for purposes of medical diagnosis or treatment, arguing that the process as a whole was tainted by the evidentiary purpose of the exam and the trooper's active role in the exam:

> [O]ne of the problems with the SART interview is that the advocate and the police officer take the lead role in the questioning.... So I think the Court has to wade through the transcript and parse out what this witness can and can't testify to. But the whole process of the SART exam gets compromised when ... what happened in this case takes place [and] compromises the process for evidentiary reasons.

Davison requested that the trial court review the transcript prior to admitting Dr. Flint–Daniel's testimony. The court refused to review the transcript and allowed the State to continue questioning Dr. Flint–Daniel, noting that Davison had an "ongoing objection" to her testimony.[14]

Although Davison's verbal objection at trial did not articulate the finer points of his argument on appeal, it was sufficient to call into question the issue of whether R.D.'s statements constituted statements for the purpose of medical diagnosis and treatment in light of the exam's evidentiary purpose and the trooper's active involvement. Davison has preserved this issue for appeal.

### 2. R.D.'s hearsay statements were not admissible under the medical treatment exception.

Under the two-part test described above, we first consider whether R.D. was motivated by a desire to seek medical diagnosis and treatment when giving her history during the SART exam. We have not yet addressed the application of the medical treatment hearsay exception for statements made during a SART exam; Davison and the State rely on cases from other jurisdictions addressing the admissibility of statements made under similar circumstances.

In *State v. Mendez* the New Mexico Supreme Court rejected a bright-line rule that a child's statements to a nurse during a sexual assault exam must be categorically excluded where the examination's purpose

---

were prior consistent statements under Evidence Rule 801(d)(1)(B), and her statements regarding digital and oral penetration were prior inconsistent statements under Evidence Rule 801(d)(1)(A). Because the State expressly abandoned this argument at oral argument, and we do not rely on R.D.'s prior statements in affirming Davison's conviction, we do not address these arguments more fully here. However, we note R.D.'s prior statements regarding penile penetration were admissible as prior consistent statements under Evidence Rule 801(d)(1)(B), which provides a statement is not hearsay if the statement is "consistent with the declarant's testimony [at trial] and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." R.D.'s prior statement to Dr. Flint–Daniel regarding penile penetration was consistent with R.D.'s testimony at trial, and Davison argued at trial that she was motivated to fabricate the sexual assault allegations due to her troubled relationship with her father and her desire to move away from Elim.

**13.** *Williams v. State*, 629 P.2d 54, 62 (Alaska 1981) (quoting *State v. Miller*, 79 N.M. 117, 440 P.2d 792, 795 (1968)).

**14.** Although no Alaska case or court rule specifically permits or prohibits continuing objections, the practice has been widely adopted by trial counsel and trial courts. *See, e.g., Vaska v. State*, 135 P.3d 1011, 1028 (Alaska 2006) ("Defense counsel made a 'continuing objection' to [the mother's] testimony 'so as to not interrupt' that testimony...."). We note that error preservation issues often arise when parties are not required to make specific objections and explain their grounds for objecting each time allegedly inadmissible evidence is introduced. Best practices suggest a trial judge should grant a continuing objection only when the basis for the objection has been clearly stated on the record.

was primarily forensic.[15] The *Mendez* court reasoned that a categorical exclusion based on the primary purpose of the exam would create an artificial distinction between medical and forensic examinations that fails to take into account the patient's motivation when making the statement:

> [A] declarant could make a statement for entirely medical purposes even if the primary purpose of the interview has become forensic. The converse is also true. Even during an initial encounter for medical purposes, the declarant could make a statement entirely unrelated to medical diagnoses or treatment, thus failing to satisfy [the medical treatment exception].[16]

The court also observed:

> We must not lose sight of the fact that [medical treatment exception] questions in the criminal context frequently involve a victim being treated for injuries sustained as a result of an alleged criminal act, and police as well as medical personnel often become involved in the investigation. That should not categorically exclude a victim's statements from evidence.[17]

In *State v. Butcher* the Ohio Court of Appeals established a multi-factor test for determining whether a child's statements to a physician were made for the purpose of medical diagnosis and treatment.[18] The court explained "statements made by a child to a medical professional are not automatically excluded simply because the child did not possess the initial motivation to seek diagnosis or treatment, but rather [was] directed there by an adult."[19] But because children, unlike adults, "may not appreciate the medical significance of an interview with a doctor," trial courts must consider the circum-

stances surrounding the exam to determine whether the child's statements were made for the purpose of medical diagnosis or treatment.[20] "Such circumstances include 'the type of environment the child was placed in, the attire of the interviewer, the presence of other medical professionals, or any other circumstance which would heighten the child's awareness that the questions asked were for the purpose of medical diagnosis or treatment.'"[21] The *Butcher* court concluded that if the trial court does not find sufficient factors indicating the child's statements were made for the purpose of medical diagnosis or treatment, then the statements must be excluded.[22]

The *Butcher* court then held that the record in that case did not contain sufficient evidence indicating that the five and six-year-old victims' statements to a doctor at a child advocacy center were made for the purpose of medical diagnosis or treatment because: (1) the children had already received medical attention from a private doctor; (2) a police officer directed their mother to take them to the child advocacy center for a second examination; (3) a social worker was present during the second examination; and (4) the doctor's primary purpose for the examination appeared to be collecting evidence.[23] The court noted, however, that its holding "does not challenge the admission of a child's statements made to a medical provider *if it is demonstrated* that the statement was made for the purpose of medical treatment or diagnosis...."[24]

Davison relies heavily on Trooper Abercrombie's participation in the SART exam, citing several unreported cases that rely on

15. 148 N.M. 761, 242 P.3d 328, 335, 339 (2010).

16. *Id.* at 337.

17. *Id.* at 339 (internal citations omitted).

18. 170 Ohio App.3d 52, 866 N.E.2d 13, 24–25 (2007). The *Butcher* court examined this issue in the context of determining whether the defendant was denied effective assistance of counsel when his trial counsel failed to object to a doctor's testimony regarding statements that the victims made during a sexual abuse exam. *Id.* at 22.

19. *Id.* at 24 (quoting *In re Corry M.*, 134 Ohio App.3d 274, 730 N.E.2d 1047, 1052 (1999)).

20. *Id.*

21. *Id.* at 24–25 (quoting *State v. Griffith*, No.2001–T–0136, 2003 WL 22994540, at *9 (Ohio App. Dec. 22, 2003) (unpublished)).

22. *Id.* at 25.

23. *Id.* at 17, 25–26.

24. *Id.* at 26 (emphasis in original).

the presence or absence of a law enforcement officer during the exam when determining whether the child's statements were made for the purpose of medical diagnosis and treatment. These cases do not focus solely on a law enforcement officer's participation; rather, they illustrate the variety of factors a trial court might consider when determining whether a child's statements are made for the purpose of seeking medical treatment.

In *State v. Woods* the Ohio Court of Appeals held that a child's hearsay statements were not admissible under the medical treatment exception when the child was interviewed by a social worker who was employed by the county, a detective helped coordinate the interview, and the detective "was either present during the interview or observed the interview."[25] In contrast, in *State v. Ferguson* the Ohio Court of Appeals held that a child's hearsay statements were admissible under the medical treatment exception when the child was interviewed by a social worker who was employed by a hospital, the purpose of the interview was to aid medical personnel in testing and treating the child, police officers watched the interview over a closed-circuit television from another room, and the social worker testified that the police did not control her interview with the child and she did not alter her questions because police officers were watching.[26] And in *West v. State* the Texas Court of Appeals held that a 14–year–old victim's statements to a sexual assault nurse examiner were properly admitted under the medical treatment exception when no family members or law enforcement officers were present during the exam, her statements were made while receiving medical treatment in a hospital, the nurse had little prior information about what had happened, and the victim's statements "guided the medical examination and assisted [the nurse] in knowing what to look for, where to look, and what tests to conduct."[27]

We decline to adopt a bright-line rule for determining whether a sexual assault victim's

statements during an exam that has both medical and forensic purposes are admissible under the medical treatment exception. Rather, we adopt the test articulated in *Sluka*, that the trial court must determine whether "the declarant's motive [is] consistent with the purpose of [Evidence Rule 803(4) ]" and whether "it [is] reasonable for the physician to rely on the information in diagnosis and treatment."[28] This test properly focuses on the victim's motivation when making the statements, regardless of the forensic purpose of the exam.

■ We also hold that a trial court must consider the circumstances surrounding the exam to determine whether a child's statements were made for the purpose of medical diagnosis and treatment. Relevant factors may include, but are not limited to, where the interview was held, who conducted the interview, the child's age, whether the child received prior medical treatment, the presence and participation of law enforcement officers or non-medical personnel, whether the exam's primary purpose was forensic or medical, whether that purpose was expressly conveyed to the child, and whether it appears that the child's responses were actually relied upon for diagnosis and treatment. No single factor is dispositive. The circumstances must be examined as a whole.

Here, the SART exam was conducted by a doctor, in a hospital, and R.D. was 14 years old. Davison concedes that at 14 years old R.D. was "old enough to understand that information she provided could affect the treatment she would receive at a medical exam." But many other factors cause us to question whether her statements were made for the purpose of medical diagnosis or treatment: (1) R.D. had already received some prior medical treatment at the clinic in Elim; (2) Trooper Abercrombie arranged the interview, met R.D. and her mother at the airport, and drove them to the hospital; (3) the

---

**25.** No. 82789, 2004 WL 1172077, at *3–4 (Ohio App. May 27, 2004) (unpublished).

**26.** No. 07AP–999, 2008 WL 5265893, at *8 (Ohio App. Dec. 18, 2008) (unpublished).

**27.** No. 03–05–00371–CR, 2008 WL 4899189, at *1, 4 (Tex.App. Nov. 14, 2008) (unpublished).

**28.** *Sluka v. State,* 717 P.2d 394, 399 (Alaska App.1986) (quoting *United States. v. Iron Shell,* 633 F.2d 77, 84 (8th Cir.1980)).

trooper and a women's advocate were present during the exam; (4) the trooper took an active role in questioning R.D. and prompted the responses that R.D. eventually gave; (5) Dr. Flint–Daniel emphasized the forensic purpose of the exam to R.D.; and (6) Dr. Flint–Daniel did not actually view and follow-up on the results of the lab tests she had ordered. These facts all suggest the exam was primarily forensic rather than medical. On balance, we cannot conclude that R.D.'s statements to Dr. Flint–Daniel regarding the assault were made for the purpose of medical diagnosis or treatment. Consequently, they lack the guaranty of trustworthiness underpinning the medical treatment exception and were not admissible under Evidence Rule 803(4).

### 3. The error was harmless as to the conviction.

■ The error in admitting R.D.'s hearsay statements was harmless for purposes of Davison's conviction. Erroneously admitted evidence is harmless if it "did not appreciably affect the jury's verdict."[29] At trial, R.D. testified to sexual assault based on penile penetration but did not testify to digital or oral penetration. Dr. Flint–Daniel testified that R.D. had stated her assailant also penetrated her digitally and orally. The jury convicted Davison of the charges based on penile penetration but acquitted him of the charges based on digital and oral penetration. Because it appears the jury did not rely on R.D.'s hearsay statements regarding digital and oral penetration in reaching its verdict, and Davison's conviction for penile penetration is adequately supported by R.D.'s trial testimony, the error in admitting R.D.'s hearsay statements did not appreciably affect the jury's verdict and was therefore harmless.

### B. A Remand Is Necessary So The Court Of Appeals May Consider Whether The Hearsay Statements From The SART Exam Were Sufficiently Verified For Inclusion In The Presentence Report.

■ Davison also argues that the trial court should have redacted the allegations of digital and oral penetration from his presentence report. The presentence report summarized R.D.'s statements from the SART exam, including her statements alleging digital and oral penetration. Davison objected to the inclusion of these statements in the report, arguing the jury had acquitted him of all counts related to those allegations. The trial court declined to redact the statements, stating it would allow them to remain because the report was merely "summarizing" the State's evidence. When sentencing Davison, the court did not refer to or expressly rely on the allegations of digital and oral penetration.

The court of appeals held that the trial court did not abuse its discretion by declining to strike the hearsay allegations from the presentence report because "a jury's verdict of acquittal does not prove the defendant's factual innocence; it only establishes that the State failed to prove the charge beyond a reasonable doubt," and because "the trial court may rely on sufficiently verified hearsay statements in the presentence report, unless the defendant makes a testimonial denial of the matter asserted."[30] As the court of appeals observed, "Davison never made a testimonial denial."[31] We agree with this portion of the court of appeals' analysis.[32]

■ Absent a testimonial denial, a trial court may rely on any allegations supported

**29.** *Jeffries v. State*, 169 P.3d 913, 924 (Alaska 2007) (quoting *Love v. State*, 457 P.2d 622, 634 (Alaska 1969)).

**30.** *Davison v. State*, Mem. Op. & J. No. 5589, 2010 WL 1729170, at *5 (Alaska App., Apr.28, 2010) (unpublished).

**31.** *Id.*

**32.** *See Hess v. State*, 20 P.3d 1121, 1125 (Alaska 2001) ("We agree that a defendant's acquittal of one charge is generally not relevant to prove

factual innocence of the facts underlying that charge .... because it proves only that the [S]tate did not prove every element of the crime beyond a reasonable doubt.") (internal citations omitted); *Hinson v. State*, 199 P.3d 1166, 1173 (Alaska App.2008) ("[A]t sentencing, the State can rely on hearsay allegations of a defendant's misconduct, unless the defendant takes the stand, denies the allegations, and submits to cross-examination regarding the matter.").

by verified information in the record.[33] "Verified information includes information that is 'corroborated or substantiated by supporting data or information.'"[34] The court of appeals concluded that R.D.'s hearsay statements were "sufficiently verified" because Dr. Flint–Daniel's testimony regarding those statements was properly admitted at trial.[35] Because we have concluded that this testimony was not admissible under the medical treatment exception, we cannot affirm this portion of the court of appeals' analysis. Accordingly, we remand to the court of appeals for that court to consider whether the allegations of digital and oral penetration were sufficiently verified for inclusion in Davison's presentence report.

## V. CONCLUSION

We AFFIRM the conviction and REMAND the sentencing issue to the court of appeals for consideration.

CHRISTEN, Justice, not participating.

**33.** *See Hinson,* 199 P.3d at 1173 ("Absent [the defendant's] testimonial denial, [the trial court] was authorized to rely on 'verified' information supporting these allegations.").

**34.** *Id.* at 1173–74 (quoting *Nukapigak v. State,* 562 P.2d 697, 701 n. 2 (Alaska 1977), *aff'd on reh'g,* 576 P.2d 982 (Alaska 1978)).

**35.** *Davison,* 2010 WL 1729170, at *5.