OPINION
{¶ 1} Appellant, Roy J. Griffith Jr., appeals from a jury verdict of the Trumbull County Court of Common Pleas, finding him guilty of ten counts of rape and ten counts of attempted rape. For the reasons that follow, we affirm the judgment against appellant.
 {¶ 2} The record discloses the following facts. Appellant resided in Howland Township, which is located in Trumbull County, Ohio. Appellant is also the biological father of the victim. The age of the victim at the time of trial was thirteen years old. Her age at the time of the earliest incident of sexual abuse was nine years old.
 {¶ 3} After reviewing an already existing case file, Sergeant Paul Monroe ("Sgt. Monroe") of the Howland Township Police Department, decided to further investigate the possibility that appellant had sexually abused the victim. On February 2, 2001, Sgt. Monroe contacted appellant by phone and inquired as to whether appellant would be willing to speak with him. Appellant informed Sgt. Monroe that he had no means of transportation available to get to the police station. Sgt. Monroe offered to pick appellant up, however, appellant rejected this offer and stated that he would meet with Sgt. Monroe at the Howland Police Station on February 5, 2001.
 {¶ 4} Appellant arrived at the police station as promised. Sgt. Monroe and appellant adjourned to a vacant office to further discuss the pending matter. Prior to their discussion, Sgt. Monroe read appellant hisMiranda rights, and appellant proceeded to sign a Howland Police Department Constitutional Rights Form ("the form"). Appellant initialed the appropriate sections of the form to confirm that he understood hisMiranda rights.
 {¶ 5} The bottom of the form included a section stating: (1) appellant's constitutional rights were being waived; (2) a lawyer was not needed at this time; (3) the form was understood; and (4) no promises or threats had been made. Appellant also initialed this section and singed the bottom of the form.
 {¶ 6} Sgt. Monroe proceeded to question appellant about the possible sexual abuse of the victim. Appellant denied allegations that he had sexually abused his daughter and requested an attorney. At this time, Sgt. Monroe ceased all questioning of appellant, and placed him under arrest for an outstanding warrant for a different crime from Ashtabula County.
 {¶ 7} Appellant was placed in a holding cell while Sgt. Monroe made plans to transfer appellant to the custody of the Ashtabula Police Department. Once the plans were made, Sgt. Monroe asked Patrolman Eric Bowker ("Patrolman Bowker") to prepare appellant for transport. Patrolman Bowker entered appellant's holding cell and informed appellant that he was being prepared for transport. Prior to leaving the holding cell, Patrolman Bowker asked appellant if he would like to speak with Sgt. Monroe before they left. Appellant replied that he wanted to speak with Sgt. Monroe.
 {¶ 8} Upon Sgt. Monroe's entrance to the holding cell, appellant stated, "Look I did it[,]" and admitted to Sgt. Monroe that he previously had sex with the victim. Following this admission, Sgt. Monroe and appellant left the holding cell and went to a booking area. Sgt. Monroe immediately acquired an audiotape recorder and procured appellant's consent to record their conversation. After recording began, appellant answered affirmatively that he did not want an attorney, that he had initiated the conversation, that he understood his Miranda rights, and that he wished to waive his rights. During the recorded interview, appellant admitted to various instances of oral and vaginal sex with his daughter.
 {¶ 9} At the conclusion of the audiotape interview, Sgt. Monroe asked appellant if he would be willing to perform a videotape interview. Appellant agreed to do so, and was accompanied by Sgt. Monroe and Patrolman Bowker to the Trumbull County Prosecutor's Office to use video equipment. Once videotaping began, Sgt. Monroe read aloud the Miranda
warnings and waiver clause from the previously initialed and signed form. Sgt. Monroe then had appellant sign the form above his original signature and add the word "video" next to it. During the videotaping, appellant again admitted to having oral and vaginal sex with his daughter.
 {¶ 10} On February 13, 2001, a grand jury indicted appellant on twenty separate counts of rape by force, or threat of force, in violation of R.C. 2907.02(A)(1)(b) and(2). These counts were subsequently amended to read as ten counts of rape and ten counts of attempted rape.
 {¶ 11} Appellant filed a motion to suppress the audiotape and videotape confessions. Subsequently, the trial court held a hearing on the motion to suppress, and received testimony from Sgt. Monroe and Patrolman Bowker regarding the circumstances surrounding appellant's confessions.
 {¶ 12} The trial court entered a judgment entry on August 14, 2001, denying appellant's motion to suppress. Specifically, the trial court determined that appellant's waiver of Miranda rights was made knowingly, voluntarily, and with his full understanding. The trial court also explained that appellant's "waiver continued through the audio statement and through any video taped statement made thereafter."
 {¶ 13} On October 15, 2001, this matter proceeded to a jury trial. During trial, both the audiotape and videotape were admitted as exhibits. Testimony pertaining to the sexual abuse of the victim was provided by Darlene Shope ("Ms. Shope"), a licensed social worker and caseworker for the Trumbull County Children Services Board. This testimony originated from an interview with the victim that was conducted by Ms. Shope. In addition, Stephanie Dewar ("Dr. Dewar"), a licensed doctor and employee of Tod's Children's Hospital, gave testimony as to her medical findings following a physical examination of the victim and admitted into evidence a medical report which was compiled during her examination. The victim, however, did not testify during trial.
 {¶ 14} Appellant's counsel moved for a dismissal or, in the alternative, an acquittal, at the end of appellee's case and at the end of appellant's case. The trial court denied these motions.
 {¶ 15} On October 17, 2001, the jury returned a verdict of guilty on ten counts of rape and ten counts of attempted rape. From this judgment appellant filed a timely notice of appeal and presents four assignments of error for our consideration:
 {¶ 16} "[1.] The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 17} "[2.] The trial court erred by denying the appellant's motion to suppress statements made by appellant to police officers.
 {¶ 18} "[3.] The trial court erred in denying appellant's motion for acquittal pursuant to Crim. R. 29 .
 {¶ 19} "[4.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 20} For the purpose of clarity, appellant's assignments of error will be discussed out of order. Appellant's second assignment of error contends that the trial court committed reversible error when it denied appellant's motion to suppress the taped statements made to police. Appellant maintains that he invoked his Fifth Amendment right to cut off questioning during the audiotaped interview. Appellant also argues that he was tricked into signing the form that waived his constitutional rights. In support of his argument, appellant explains that his illiteracy caused his waiver of rights to be "involuntary and unintelligent."
 {¶ 21} Before examining the merits of appellant's second assignment of error, we will first set forth the proper standard of review for a motion to suppress hearing. At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284,288.
 {¶ 22} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002-Ohio-1337, 2002 Ohio App. LEXIS 1345.
 {¶ 23} With the foregoing standard of review in place, we will now examine the merit of appellant's second assignment of error. In Mirandav. Arizona (1966), 384 U.S. 436, 444, the Supreme Court of the United States held that statements stemming from custodial interrogations are admissible only if it is shown that a police officer gave the suspect certain prescribed warnings before commencing the custodial interrogation. If the warnings were not given, the statements must be suppressed. Id. at 44. Moreover, the Miranda warnings given by the police officer must inform the suspect in clear and unequivocal terms that he or she has the right to remain silent. State v. Mack, 73 Ohio St.3d 502,513, 1995-Ohio-273.
 {¶ 24} Here, the trial court, in its judgment entry, determined that the proper Miranda warnings were given to appellant prior to all three of his interrogations. Appellant concedes that he was given hisMiranda warnings prior to any questioning by Sgt. Monroe.
 {¶ 25} That being said, "once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." Miranda at 473-474.
 {¶ 26} Likewise, once a suspect invokes his Sixth Amendment right to counsel all interrogation must cease until the suspect acquires an attorney. See, e.g., State v. Raglin, 83 Ohio St.3d 253, 263,1998-Ohio-110. However, interrogation may resume if the suspect initiates further communication. Id.
 {¶ 27} As stated previously, during appellant's initial interview, Sgt. Monroe immediately ceased his interrogation once appellant requested an attorney. Later, when Patrolman Bowker asked appellant whether he had any questions prior to transport, appellant told Patrolman Bowker that he wished to speak with Sgt. Monroe. At that time, Sgt. Monroe entered appellant's holding cell and resumed interrogating appellant only after appellant confessed to having sex with his daughter.
 {¶ 28} We first note that Patrolman Bowker's inquiry as to whether appellant had any questions prior to transport does not represent the initiation of further interrogation. Interrogation "* * * must reflect a measure of compulsion above and beyond that inherent in custody itself."Rhode Island v. Innis (1980), 446 U.S. 291, 300-301. See, also, State v.Melendez (Dec. 23, 1994), 11th Dist. No. 93-A-1795, 1994 Ohio App. LEXIS 5949. Moreover, Sgt. Monroe's interrogation did not resume until appellant had stated his unsolicited admission. Thus, appellant'sSixth Amendment right to counsel has not been violated, as further interrogation did not proceed until appellant initiated further communication with Sgt. Monroe.
 {¶ 29} Appellant, however, contends that during the audiotape interview, his two separate statements, "You got what you wanted here. Okay?" and "I'm Done[,]" invoked his Fifth Amendment privilege. Therefore, appellant argues that any subsequent statements he made during the audiotape interview and videotape interview were made in violation of his Fifth Amendment right to cut off questioning and should be suppressed. We disagree.
 {¶ 30} In Michigan v. Mosley (1975), 423 U.S. 96, the Supreme Court of the United States explained that once a suspect invokes his right to remain silent, police must cease questioning him. However, in Davis v.United States (1994), 512 U.S. 452, 461, the Court held, "after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." (Emphasis added.) Although Davis dealt with invocations of the right to counsel under the Sixth Amendment, the Supreme Court of Ohio, along with every federal circuit court that has addressed this issue, has concluded that the holding in Davis applies to both the Sixth Amendment right to counsel and Fifth Amendment right to cut off questioning. See, e.g., State v. Murphy, 91 Ohio St.3d 516, 520, 2001-Ohio-112; Bui v.DiPaolo (C.A. 1, 1999) 170 F.3d 232, 239.
 {¶ 31} Accordingly, the Supreme Court of Ohio has found that a defendant must clearly state a request that all police questioning cease to enforce his or her Fifth Amendment rights. Specifically, the Court explained that "police must honor an invocation of the right to cut off questioning only if it is unambiguous." (Emphasis added.) Murphy at 520.
 {¶ 32} After reviewing Sgt. Monroe's questioning and appellant's statement, "You got what you wanted. Okay?[,]" it is ambiguous whether appellant was requesting that the questioning itself cease, or if he was merely making an editorial comment on the significance of his own responses. Such ambiguity was confirmed when appellant, without hesitation, continued to willingly answer further questions posed by Sgt. Monroe. Because appellant's statement did not clearly or unambiguously invoke his Fifth Amendment right to cut off questioning, Sgt. Monroe did not violate appellant's Miranda rights by continuing to question appellant.
 {¶ 33} Appellant's second statement, "I'm done[,]" when reviewed in the context of Sgt. Monroe's questioning, is also ambiguous. Prior to appellant's statement, Sgt. Monroe asked whether appellant had any further information in regards to a specific question Sgt. Monroe had previously asked. To this appellant replied, "I'm Done."
 {¶ 34} Such statement, taken in the context of the questioning, could have meant that appellant's previous answer was complete and that he had nothing to add to that answer. This statement did not clearly display appellant's intention to not answer subsequent questions. Hence, it did not invoke his Fifth Amendment right to cut off questioning. Again, we note that appellant continued to answer Sgt. Monroe's subsequent questions willingly and without hesitation. Due to this ambiguity and lack of clarity, Sgt. Monroe could continue to question appellant. Murphy at 520.
 {¶ 35} As a result, the trial court did not err by denying appellant's motion to suppress on this basis. Appellant's argument that the trial court erred by not suppressing the audiotape and videotape is not well-taken.
 {¶ 36} Appellant also contends that both the audiotape statements and videotape statements should have been suppressed because they were made involuntarily and unintelligently. Appellant maintains that his illiteracy resulted in a deficient waiver of his constitutional rights.
 {¶ 37} First, it is apparent that appellant failed to inform the trial court that he was illiterate during the suppression hearing. Generally, "`an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" State v.Campbell (1994), 69 Ohio St.3d 38, 40, quoting State v. Childs (1968),14 Ohio St.2d 56.
 {¶ 38} The plain error doctrine allows an appellate court, pursuant to Crim.R. 52(B), to recognize plain errors or defects involving substantial rights which were not brought to the attention of the trial court. Campbell at 41. This doctrine, however, is reserved for those rare cases in which, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 39} In the case at bar, appellant has obtained new counsel who was not part of the suppression hearing or jury trial proceedings. We agree with counsel that the majority of the prosecutor's case centered upon appellant's taped confessions. As such, but for these confessions the outcome of the case must likely would have been in appellant's favor. Therefore, we will examine the merit of appellant's contention, despite his original counsel's failure to notify the trial court of his claimed illiteracy.
 {¶ 40} At the outset we note, "the state carries the burden of proving the voluntariness of a confession by a preponderance of the evidence." State v. Hill, 64 Ohio St.3d 313, 318, 1992-Ohio-43. InColorado v. Connelly (1986), 479 U.S. 157, the Supreme Court of the United States held that evidence of police coercion or overreaching is necessary for a finding that a confession was involuntary. The Court further stated that while a defendant's mental condition or mental ineptitude is relevant to an individual's susceptibility to police coercion, this alone will not render a confession involuntary as a matter of law. Connelly at 164. See, also, Hill.
 {¶ 41} During the suppression hearing, testimony demonstrated that neither Sgt. Monroe nor Patrolman Bowker used coercion or overreaching to obtain appellant's confession. To the contrary, appellant initiated the confessions and willingly agreed to put both confessions on audiotape and videotape. An examination of both taped confessions confirms that neither Sgt. Monroe nor Patrolman Bowker engaged in any coercive or overreaching tactics to obtain appellant's confession. Further, the warnings were also read aloud to appellant prior to his signing and initialing the form. Thus, in this case, appellant's alleged illiteracy would not have a detrimental effect upon his ability to knowingly and intelligently waive the oral reading of his Miranda rights.
 {¶ 42} We find that, despite appellant's alleged illiteracy, both the waiver of his constitutional rights and his subsequent confessions were made voluntarily, knowingly, and intelligently. Appellant's argument is not well-taken. Thus, the trial court did not err in denying appellant's motion to suppress the audiotape and videotape confessions, and appellant's second assignment of error is meritless.
 {¶ 43} Under his third assignment of error, appellant maintains that the trial court erred in denying his motions for acquittal under Crim.R. 29. Appellant's argument is based upon the contention that the prosecution at trial failed to present sufficient evidence of specific dates for each rape and attempted rape. Appellant further contends that the prosecution failed to establish how the number of charges against appellant was determined. We disagree.
 {¶ 44} Crim.R. 29(A) provides:
 {¶ 45} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 46} The relevant inquiry when reviewing sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rationale trier of fact could have found allessential elements of the crime proven beyond a reasonable doubt. Statev. LaMar, 95 Ohio St.3d 181, 197, 2002-Ohio-2128. When conducting such a review we do not weigh the evidence; rather, our inquiry is limited to whether reasonable minds could reach the conclusion reached by the trier of fact. Id.
 {¶ 47} In the case at bar, appellant was convicted of ten counts of rape in violation of R.C. 2907.02(A)(1)(b) and (2) and ten counts of attempted rape in violation of R.C. 2907.02(A)(1)(b). An examination of both statutory sections reveals that the specific date that a rape or attempted rape occurred is not an element that the prosecution is required to prove. This being the case, we find that the prosecution's failure to specify the exact dates of each rape and attempted rape is irrelevant as to whether sufficient evidence was presented to establish the necessary elements. This portion of appellant's argument is not well taken.
 {¶ 48} Furthermore, in his videotaped confession, appellant disclosed an exact number of instances of sexual abuse. Based upon appellant's confession, the prosecution charged appellant with ten counts of rape and ten counts of attempted rape. During his videotaped confession, appellant stated that his daughter had performed oral sex on him in 1997 (Count 1 rape). He then admitted that twice in the summer of 2000 he engaged in vaginal intercourse with his daughter (Counts 2 
3 rape). Appellant also stated that within the year previous to his confession his daughter performed oral sex on him around seven times (Counts 4-10 rape). Finally, he confirmed that he had performed oral sex on his daughter around ten times within the year previous to his confession (Counts 11-20 attempted rape).[1]
 {¶ 49} The foregoing demonstrates that the prosecution presented sufficient evidence, through appellant's videotaped confession, to establish how it determined the charges against appellant. Appellant's videotaped confession revealed that he had engaged in ten separate instances of rape and ten separate instances of attempted rape. The trial court did not err in denying appellant's request for an acquittal pursuant to Crim.R. 29. Appellant's third assignment of error is without merit.
 {¶ 50} Appellant's first assignment of error contends that he received ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution and Section10, Article I of the Ohio Constitution. The issues presented for review are: (1) whether his counsel's failure to object to inadmissible hearsay describing the rapes and attempted rapes was ineffective assistance of counsel; and (2) whether his counsel's failure to object to an expert witness opinion that failed to state the opinion as a "reasonable degree of medical certainty" was ineffective assistance of counsel.
 {¶ 51} To establish ineffective assistance of counsel, the following two-pronged analysis must be satisfied. Appellant must demonstrate, "(1) deficient performance by counsel, i.e., that, in light of all the circumstances, counsel fell below an objective standard of reasonable representation, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different." State v. Group,98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 132.
 {¶ 52} As to the first issue, appellant specifically points to the testimony of Ms. Shope and Dr. Dewar as instances of inadmissible hearsay which were not objected to by trial counsel. We must first determine whether counsel's failure to object constituted a deficient performance. A threshold issue is whether the statements made by either Ms. Shope or Dr. Dewar were, as a matter of law, inadmissible hearsay.
 {¶ 53} In his appellate brief, appellant maintains that the medical diagnosis exception to hearsay, under Evid.R. 803(4), is not applicable to Ms. Shope's testimony. Evid.R. 803(4) provides that statements made for the purpose of medical diagnosis or treatment are excluded from the general rule precluding the introduction of hearsay evidence. It states:
 {¶ 54} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 55} "* * *
 {¶ 56} "(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 57} Appellant cites State v. Dever, 64 Ohio St.3d 401,1992-Ohio-41, as authority for his contention that EvidR. 803(4) is not applicable to the case at bar. In Dever, the Supreme Court of Ohio discussed the applicability of Evid.R. 803(4) in child sex abuse cases. The Court reasoned that the admissibility of hearsay statements under Evid.R. 803(4) is based upon the belief that a declarant's subjective motive to seek medical attention generally guarantees the statement's trustworthiness. Dever at 407. In other words, the declarant is motivated to tell the truth because the effectiveness of the diagnosis or treatment depends upon the accuracy of the information given. Id. However, "[s]erious problems arise in admitting the statements when a `child of tender years' is the declarant because that child will often not be personally motivated to seek treatment." Id. The Court explained that because young children are normally not personally motivated to seek treatment, the purposes for making these statements no longer guarantee the statements' trustworthiness under Evid.R. 803(4). Dever at 407.
 {¶ 58} To resolve this dilemma, the Court held that, "[w]hile we recognize that a young child would probably not personally seek treatment, * * * we do not find that the child's statements relating to medical diagnosis or treatment are always untrustworthy for that reason alone. Once the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present. * * * Absent extraordinary circumstances, the child has no more motivation to lie than an adult would in similar circumstances." Id. at 409-410. Accordingly, when determining whether Evid.R. 803(4) is applicable to a statement made by a child of tender years, the trial court must consider the circumstances surrounding the child's out-of-court statement to determine if it was made to a medical professional for the purposes of diagnosis. Dever at 410.
 {¶ 59} This court has previously applied Dever's holding to instances in which a social worker's testimony included a non-testifying child's statements regarding sexual abuse. See, e.g., In re Dustin
(1999), 11th Dist. No. 98-L-034, 1999 Ohio App. LEXIS 4134; State v.Demetris, 11th Dist. No. 2001-T-0025, 2002-Ohio-3711, 2002 Ohio App. LEXIS 3771. In doing so, we have examined the surrounding circumstances that were present when the child made the statements to determine whether the child was aware that their statements were made for the purpose of a medical diagnosis. Such circumstances included the type of environment the child was placed in, the attire of the social worker, the presence of other medical professionals, or any other circumstance which would heighten the child's awareness that the questions asked were for the purpose of medical diagnosis or treatment.
 {¶ 60} Notwithstanding the surrounding circumstances, the purpose of the interview must still conform to the requirements of Evid.R. 803(4). To wit, the prosecution must supply evidence that the interview was conducted to provide the child with medical or psychological assistance. In In re Corry M. (1999), 134 Ohio App.3d 274, 283, we held that the trial court properly excluded the hearsay testimony of a social worker because the state failed to provide evidence of the circumstances surrounding her interview with the child. In reaching this conclusion, this court not only focused on the absence of any evidence concerning the child's motivation for participating in the interview with the social worker and the fact that no one informed the child of the interview's purpose, but also on the social worker's acknowledgement that she conducted the interview in order to investigate allegations of abuse. Id. 282-283. Accordingly, there was no evidence to establish that the purpose of the interview was to provide medical or psychological care.
 {¶ 61} In the instant case, testimony provided by Ms. Shope demonstrated that her interview with the victim was made for investigatory purposes, rather than to assist the victim medically:
 {¶ 62} "Q: Okay. Describe what you did when Stephanie was at the CAC that day.
 {¶ 63} "A: Stephanie had come with her mother to the Child Advocacy Center that day, and my primary responsibility at that time was to interview Stephanie regarding the allegations that had been made."
 {¶ 64} Clearly, the sole purpose of Ms. Shope's interview was to gather information regarding appellant's possible sexual abuse of the victim. The prosecution supplied no evidence that might establish this interview was taken to assist the victim physically or mentally. Therefore, the purpose of Ms. Shope's interview with the victim did not conform to the requirements of Evid.R. 803(4), and any hearsay testimony based upon this interview should have been objected to by counsel. Counsel's failure to object has established a deficient performance.
 {¶ 65} Furthermore, testimony describing the surrounding circumstances of the interview established that the victim was aware that the interview was being taken for a purpose other than medical or psychological assistance. The interview took place at the Child Advocacy Center ("CAC"), which is a child friendly building, separate from any hospital, designed for interviewing children and giving medical examinations. The room in which the victim made her statements to Ms. Shope contained loveseat type furniture, children's toys, a table and a few chairs. As described, these surrounding circumstances failed to notify the victim of any medical purpose for the pending interview. Testimony provided by Ms. Shope further established that the victim was unaware that the interview was being conducted for medical or psychological assistance:
 {¶ 66} "Q: Did you inquire of her [victim] why she was there?
 {¶ 67} "A: Yes.
 {¶ 68} "Q: And was she able to indicate to you why she was there?
 {¶ 69} "A: Yes.
 {¶ 70} "Q: And what was the reason she told you?
 {¶ 71} "A: To talk about what had happened between her and her father."
 {¶ 72} It is clear that the surrounding circumstances failed to notify the victim that the interview with Ms. Shope was possibly intended to assist in a medical diagnosis or to provide treatment of any kind. This is further shown by Ms. Shope's testimony demonstrating that the victim believed she was at the CAC to talk about what happened between her and her father. For this additional reason, counsel's failure to object constitutes a deficient performance satisfying the first prong of our ineffective assistance of counsel analysis.
 {¶ 73} Dr. Dewar's testimony was based upon her viewing of Ms. Shope's interview with the victim, which was observed via closed circuit television outside of the victim's presence, and her brief discussion with the victim prior to a physical examination. Again, testimony by Dr. Dewar confirms that the purpose of both interviews was to investigate the victim's allegations of sexual abuse:
 {¶ 74} "Q: And were you able to determine how [the victim] happened to be referred to the Child Advocacy Center?
 {¶ 75} "A: Yes, we did.
 {¶ 76} "Q: What was the procedure for getting to see you?
 {¶ 77} "A: Basically what happened was that I guess there was some allegations made about a male person that was living in the home. There was some concern that he was sexually abusing [the victim] and when she was confronted about that said, no, actually that's not true. It's my father that's sexually abusing me.
 {¶ 78} "Q: Okay.
 {¶ 79} "A: And so that was what triggered the entire evaluation."
 {¶ 80} Based upon Dr. Dewar's testimony, it is evident that these interviews were conducted to gather information regarding appellant's possible sexual abuse of the victim. This is further exemplified by evidence confirming that the victim visited and received medical attention at the Tod's Children's Hospital emergency room just prior to her examination at the CAC. The victim's original emergency room visit was made to obtain medical or psychological assistance, while the victim's interviews at the CAC were conducted to further investigate her allegations that appellant had sexually abused her. Therefore, that portion of the testimony provided by Dr. Dewar that was based upon Ms. Shope's interview with the victim, and the portion of the testimony originating from Dr. Dewar's interview with the victim just prior to the victim's physical examination, did not conform to the requirements of Evid.R. 803(4). Such testimony was inadmissible hearsay and should have been objected to by counsel. Counsel's failure to object to these specific portions of Dr. Dewar's testimony constituted a deficient performance.
 {¶ 81} Despite counsel's deficient performance by failing to object to both Ms. Shope's and Dr. Dewar's inadmissible hearsay testimony, a review of the remaining admissible evidence demonstrates that any possible ensuing prejudice did not establish a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different. If the inadmissible hearsay testimony had been excluded, the evidence at trial would have still included appellant's audiotaped and videotaped confessions. Both confessions supplied sufficient evidence of ten counts of rape and ten counts of attempted rape.
 {¶ 82} Furthermore, much of the balance of Dr. Dewar's medical report and testimony regarding the victim's physical examination was admissible. Specifically, Dr. Dewar's admissible expert opinion, which was based upon the physical examination, concluded that there was physical evidence that some form of sexual abuse had occurred. Based upon the confessions, the admissible testimony by Dr. Dewar and the admissible portions of Dr. Dewar's medical report, the jury had abundant evidence upon which to convict appellant. Therefore, the second prong of the ineffective assistance of counsel analysis has not been satisfied. This portion of appellant's assignment of error is not well taken.
 {¶ 83} Finally, appellant contends that his trial counsel was ineffective due to a failure to object to Dr. Dewar's expert testimony. Appellant maintains that Dr. Dewar's expert testimony, which included her opinion that the victim had been sexually abused, was made without stating that such opinion was based upon reasonable scientific or medical certainty. Appellant submits that he was clearly prejudiced by his trial counsel's failure to object to such testimony because it misled the jury. We disagree.
 {¶ 84} The portion of Dr. Dewar's testimony appellant cited to in his appellate brief is as follows:
 {¶ 85} "Q: [on direct examination] And finally, at the bottom of the page, under results, can you tell the jury what your results were or your impression was?
 {¶ 86} "A: The results were that there were physical findings present and that the evaluation —
"Mr. Goodman: [appellant's trial counsel] Objection.
"The Court: Overruled."
 {¶ 87} It is evident that appellant's trial counsel did not fail to object to Dr. Dewar's testimony. Although no basis was given for appellant's objection, it was stated clearly for the record and immediately overruled by the court. This portion of appellant's assignment of error is also not well taken.
 {¶ 88} Appellant has failed to show that he received ineffective assistance of counsel in violation of his constitutional rights. Appellant's first assignment of error is without merit.
 {¶ 89} Appellant's fourth and final assignment of error contends that the jury's verdict was against the manifest weight of the evidence. Specifically, appellant maintains that no evidence of any individual rape was presented to the jury upon which to base its conviction.
 {¶ 90} When reviewing a claim that a judgment was against the manifest weight of the evidence, we must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52.
 {¶ 91} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. An appellate court is to engage in a limited weighing of the evidence introduced at trial in order to resolve whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J. concurring). Accordingly, the reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of syllabus.
 {¶ 92} As stated previously, both of appellant's taped confessions in conjunction with the admissible portions of Dr. Dewar's testimony and medical report regarding the victim's physical examination were properly placed before the jury. Based on the confessions, testimony and medical report, there was a substantial amount of evidence demonstrating that appellant actually raped the victim on ten separate occasions and attempted to rape the victim on ten separate occasions. We therefore find that the jury did not lose its way and there has been no manifest miscarriage of justice. Appellant's fourth assignment of error is without merit.
 {¶ 93} Based upon the foregoing analysis, appellant's four assignments of error are without merit. The jury verdict is affirmed.
Judgment affirmed.
Diane V. Grendell, J., concurs.
William M. O'Neill, J., concurs with concurring opinion.
[1] Originally, these ten counts of attempted rape had been counts of rape. However, the prosecution amended these counts due to conflicting statements made by the victim which demonstrated that appellant was not successful in his attempt to perform oral sex on her.