OPINION
{¶ 1} Appellant, Hervey H. Dunn, appeals from a judgment of the Trumbull County Court of Common Pleas, convicting him on twenty counts of gross sexual imposition. For the reasons that follow, we reverse appellant's convictions and remand this matter for further proceedings.
 {¶ 2} On September 13, 2002, appellant was indicted on the following counts: (1) fourteen counts of rape, each a first degree felony in violation of R.C. 2907.02(A)(1)(B) (2) (B); and (2) six counts of gross sexual imposition, each a third degree felony in violation of R.C. 2907.05(A)(4) (B). These charges originated from appellant's alleged sexual molestation of an eleven-year-old victim. At his arraignment, appellant pleaded not guilty to these charges.
 {¶ 3} Appellant filed a motion to suppress/motion in limine, requesting that the trial court exclude the testimonial evidence and report of Lynn Van Such ("Lynn"). Appellant wanted to exclude evidence pertaining to various admissions of sexual molestation made by appellant during a counseling interview with Lynn. He maintained that such evidence was privileged information. The trial court denied appellant's motion to suppress/motion in limine.
 {¶ 4} This matter proceeded to a jury trial on December 8, 2003. During trial, the victim provided testimony with respect to the charges of rape and gross sexual imposition. The victim testified that she was twelve years old at the time of trial and that she was friends with appellant's daughter. The victim stated that approximately two years ago, in 2001, appellant sexually molested her on numerous occasions, in Trumbull County, Ohio.
 {¶ 5} Specifically, the victim testified that on ten separate occasions appellant touched her vagina, under her clothing, while appellant was at her house. She also stated that on three separate occasions appellant fondled her breasts, under her clothing, while he was at her house. Moreover, the victim testified that on ten separate occasions appellant touched her vagina, under her clothing, while she was at appellant's daughter's home. And she stated that on three separate occasions appellant fondled her breasts, under her clothing, while she was at appellant's daughter's home. However, the victim's testimony did not reveal actual sexual penetration by appellant.
 {¶ 6} Diane Harris ("Diane"), a social worker at the Child Advocacy Clinic ("CAC"), interviewed the victim regarding the sexual molestation claims. The interview took place at the CAC and was viewed via closed circuit television by a police officer and a doctor. Diane testified with respect to statements made by the victim during the interview. These statements supported the victim's testimony regarding the sexual molestation by appellant. Appellant's counsel objected to Diane's testimony as hearsay and moved to strike at the conclusion of her testimony. The trial court overruled trial counsel's objection and motion to strike.
 {¶ 7} Doctor Wilfred Dodgson ("Dr. Dodgson") performed a medical examination of the victim following her interview at the CAC. Dr. Dodgson testified there was no physical evidence of abuse, but he believed that the victim had been sexually molested based upon his interview with her. Dr. Dodgson's testimony and an admitted medical report implicated appellant in the sexual molestation.
 {¶ 8} Over appellant's objection, Lynn testified as to his interview with appellant. Lynn testified that he was employed as a social worker at Parkview Counseling Center in 2002. He stated that in August 2002, appellant requested a counseling session. Lynn testified that in the course of the counseling session appellant admitted to "fondling" the victim. The state admitted notes taken by Lynn during the counseling session with appellant. These notes reiterated appellant's admission of "fondling" the victim.
 {¶ 9} Lynn's testimony and report, however, included additional statements made by appellant, which were not admissions, but did relate to the alleged sexual molestation. These statements related to the initial police investigation of the alleged sexual molestation and appellant's consideration of absconding from police.
 {¶ 10} Following the close of trial, the court provided jury instructions as to the counts of rape and gross sexual imposition. The court provided additional instructions as to the lesser included offense of gross sexual imposition for each count of rape. The jury found appellant not guilty on the fourteen counts of rape. But the jury found appellant guilty on fourteen counts of the lesser included offense of gross sexual imposition. The jury also found appellant guilty on the original six counts of gross sexual imposition. The court subsequently entered judgment accordingly, thereby convicting appellant on twenty counts of gross sexual imposition. The court sentenced appellant to a prison term of four years on each count of gross sexual imposition, with each term to run concurrently.
 {¶ 11} From this judgment, appellant filed a timely notice of appeal and now sets forth the following five assignments of error:
 {¶ 12} "[1.] The trial court erred in denying appellant's motion to strike the testimony of the social worker that interviewed the alleged victim numerous times.
 {¶ 13} "[2.] The Appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth amendment to the United States Constitution and Section 10, Article One of the Ohio Constitution.
 {¶ 14} "[3.] The trial court erred when it denied an objection made by the Defendant that testimony from a confidential meeting with the defendant's counselor was admissible.
 {¶ 15} "[4.] The trial court erred when it admitted into evidence, over appellant's objection, a report compiled by the crisis counselor during his interview with appellant.
 {¶ 16} "[5.] The Appellant's convictions were against the manifest weight of the evidence."
 {¶ 17} For purposes of clarity, we will discuss appellant's assignments of error out of order. We will first examine appellant's third and fourth assignments of error in a consolidated fashion.
 {¶ 18} Under his third and fourth assignments of error, appellant argues that the trial court erred by failing to exclude portions of Lynn's testimony and portions of Lynn's written report, as such evidence was privileged. In doing so, appellant concedes that those portions of Lynn's testimony and report regarding his admissions of "fondling" the victim were not privileged. However, he maintains that additional portions of Lynn's testimony and report were privileged and, therefore, should have been excluded. In particular, appellant notes that the testimony and report included evidence regarding the initial police investigation; appellant debating whether to abscond from police; appellant's drug use; appellant's demeanor; and appellant's educational level. Appellant concludes that the introduction of these privileged portions of the interview resulted in severe prejudice.
 {¶ 19} R.C. 2317.02(G) provides a statutory exception with respect to a client's confidential communications to a counselor or social worker, to wit:
 {¶ 20} "(a) The communication or advice indicates clear and present danger to the client or other persons. For the purposes of this division, cases in which there are indications of present or past child abuse or neglect of the client constitute a clear and present danger."
 {¶ 21} R.C. 2317.02(G)(1)(A) establishes an exception to privileged communications between a counselor and client when the communication indicates a clear or present danger to other individuals. Appellant concedes that his admission to "fondling" the victim falls under this exception and, therefore, is not privileged. However, appellant argues that additional evidence outside the scope of this admission should have been excluded. We agree.
 {¶ 22} In State v. Orwick, 153 Ohio App.3d 88, 2003-Ohio-2681, at ¶ 14, the Third Appellate District aptly noted as follows:
 {¶ 23} "Nothing in * * * R.C. 2317.02 supports the State's characterization of the exception at issue here as a sweeping waiver providing unbridled disclosure. Those cases dealing with the breadth of exceptions to statutory privileges generally limit the scope of disclosure to communications falling within the confines of the exception to the privilege. The mere fact that some statements are excepted from the privilege does not compel disclosure of all of a defendant's confidential communications to his counselor, physician, or therapist. Limited disclosure is appropriate as to the statements which triggered a warning required by a compelled reporting statute or communications providing indicia of a clear and present danger to the client or other persons. Although the privilege is to be narrowly construed, we are not willing to broaden [the] scope of an exception where the remaining communications fall squarely with the purviews of the statute."
 {¶ 24} We agree with the Third District's determination that only those confidential communications that fall within the narrowly tailored exception of R.C. 2317.02 may be disclosed. Here, any additional evidence outside the scope of appellant's admission to "fondling" the victim should have been excluded. Thus, the trial court erred by failing to exclude those portions of Lynn's testimony, and failing to redact those portions of her written report, which did not pertain to appellant's admission.
 {¶ 25} Moreover, we cannot conclude that those portions of Lynn's testimony and report, which should have been excluded, were non-prejudicial. To the contrary, these particular portions of Lynn's testimony and written report inculpated appellant and assisted the prosecution in obtaining a conviction. Specifically, this improper evidence established that, due to the initial police investigation, appellant was considering absconding from police. Appellant's consideration of flight from the police provided additional evidence that supported his conviction, as evidence of "[f]light is akin to `an admission by conduct which expresses consciousness of guilt.'" State v.Henry, 10th Dist. No. 04AP-1061, 2005-Ohio-3931, at ¶ 39, quoting U.S.v. Martinez (C.A.10, 1982), 681 F.2d 1248, 1256.
 {¶ 26} Accordingly, because the improper introduction of certain portions of Lynn's testimony and report were detrimental to appellant's defense and assisted the prosecution, we are unable to conclude that appellant was not prejudiced by such evidence. Thus, appellant's third and fourth assignments of error are with merit.
 {¶ 27} Next, the trial court's failure to exclude the foregoing improper evidence is further exacerbated by its failure to exclude the hearsay testimony of Diane. Appellant's first assignment of error argues that the trial court erred in admitting Diane's testimony because the medical diagnosis hearsay exception was inapplicable. He argues the state failed to provide a sufficient foundation demonstrating the victim had knowledge that her interview with Diane was for medical purposes. We agree.
 {¶ 28} Evid. R. 803(4) provides that statements made for the purpose of medical diagnosis or treatment are excluded from the general rule precluding the introduction of hearsay evidence. It states:
 {¶ 29} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 30} "* * *
 {¶ 31} "(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 32} In State v. Dever, 64 Ohio St.3d 401, 1992-Ohio-41, the Ohio Supreme Court discussed the applicability of Evid. R. 803(4) in child sex abuse cases. The Court noted that the admissibility of hearsay statements under Evid. R. 803(4) is predicated upon the belief that a declarant's subjective motive to seek medical attention generally guarantees the statement's trustworthiness. Dever at 407. In other words, the declarant is motivated to make truthful statements because the effectiveness of the diagnosis or treatment depends upon the accuracy of the information provided. Id. However, "[s]erious problems arise in admitting the statements when a `child of tender years' is the declarant because that child will often not be personally motivated to seek treatment." Id. The Court reasoned that because young children are normally not personally motivated to seek treatment, the purposes for making these statements no longer guarantee the statements' trustworthiness under Evid. R. 803(4).Dever at 407.
 {¶ 33} To resolve this dilemma, the Court held, "[w]hile we recognize that a young child would probably not personally seek treatment, * * * we do not find that the child's statements relating to medical diagnosis or treatment are always untrustworthy for that reason alone. Once the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present. * * * Absent extraordinary circumstances, the child has no more motivation to lie than an adult would in similar circumstances." Id. at 409-410. Accordingly, when determining whether Evid. R. 803(4) is applicable to a statement made by a child of tender years, the trial court must consider the circumstances surrounding the child's out-of-court statement to determine if the child knowingly made the statement to a medical professional for the purpose of diagnosis. Dever at 410.
 {¶ 34} This court has previously applied Dever's holding to instances in which a social worker's testimony included a child's statements regarding sexual abuse. See, e.g., In re Dustin (1999), 11th Dist. No. 98-L-034, 1999 Ohio App. LEXIS 4134; State v. Demetris, 11th Dist. No. 2001-T-0025, 2002-Ohio-3711. In doing so, we examined the surrounding circumstances present when the child made the statements, to ascertain whether the child was aware their statements were being made for the purpose of a medical diagnosis. We specifically examined the type of environment the child was placed in, the attire of the social worker, the presence of other medical professionals, or any other circumstance which would heighten the child's awareness that the questions asked were for the purpose of medical diagnosis or treatment.
 {¶ 35} Regardless of the surrounding circumstances, the purpose of the interview must also conform to the requirements of Evid. R. 803(4). Simply put, the state must supply evidence that the interview was conducted to provide the child with medical or psychological assistance. In In Re CorryM. (1999), 134 Ohio App.3d 274, 283, we held that the trial court properly excluded the hearsay testimony of a social worker because the state failed to provide evidence of the circumstances surrounding her interview with the child. We first focused on the absence of any evidence concerning the child's motivation for participating in the interview with the social worker and the fact that no one informed the child of the interview's purpose. Id. at 282-283. However, we also focused on the social worker's acknowledgement that she conducted the interview in order to investigate allegations of abuse. Id. Accordingly, there was no evidence to establish that the purpose of the interview was to provide medical or psychological care.
 {¶ 36} Here, Diane described the surrounding circumstances of the interview at the CAC. She testified that the interview room did not look like a hospital room, rather it was bright and colorful with children's toys and comfortable furniture. Diane stated that only she and the victim were in the room during the interview. Dr. Dodgson and a police officer viewed the interview on closed circuit television in a separate room. She testified that these appearances created a stress free environment for the child.
 {¶ 37} Diane also provided the following testimony on direct-examination:
 {¶ 38} "Q. Okay. Let's talk about the interview you conducted with [the victim]. Can you tell the jury what you did in that interview?
 {¶ 39} "A. The first thing that I did is to establish a rapport with the child. * * * [S]o I tell them what the Child Advocacy Center is about, what's going to happen, that I'll be there with them and what my role is."
 {¶ 40} The surrounding circumstances and Diane's general testimony fail to establish that the victim was aware her statements were being used as part of a medical diagnosis. As described, the environment surrounding the interview failed to inform the victim that the interview was being conducted for medical purposes. Furthermore, although Diane provided general testimony regarding information she provided the victim with prior to the interview, she failed to specifically establish that this information made the victim aware of a medical purpose. See, e.g.,State v. Griffith, 11th Dist. No. 2001-T-0136, 2003-Ohio-6980, at ¶ 65. These surrounding circumstances simply failed to notify the victim that the interview was being conducted for a medical diagnose.
 {¶ 41} In addition, the state supplied no evidence that might establish this interview was taken to medically assist the victim physically or mentally. To the contrary, Diane's testimony revealed that she would often consult with the police officer viewing the interview to determine what questions to ask the victim. This clearly indicates an investigative purpose. In addition, Diane stated that after the interview was completed, she referred the victim to psychological counseling and a medical examination. These subsequent actions further exemplify that the purpose of the victim's initial interview with the CAC was solely for investigative purposes, while the ensuing counseling session and physical examination were for medical purposes. See, e.g., Griffith at ¶ 80. It is evident that this interview was conducted to gather information regarding appellant's possible sexual molestation of the victim.
 {¶ 42} Because the state failed to set forth the proper foundation, and because the interview failed to conform to the medical purpose of Evid. R. 803(4), the trial court should have excluded the inadmissible hearsay testimony of Diane. In Griffith, this court determined that the improper introduction of a social worker's hearsay testimony did not establish a reasonable probability that the outcome of the matter would have been different had such evidence been excluded and, therefore, the defendant's convictions were affirmed. Id. at ¶ 81. Our decision inGriffith, however, was predicated upon the defendant's detailed confession, which established "sufficient evidence of ten counts of rape and ten counts of attempted rape" of his minor daughter. Id. In the case at bar, appellant only admitted to "fondling" the victim. Unlike inGriffith, appellant's admission, standing alone, fails to provide sufficient evidence of twenty counts of gross sexual imposition. Accordingly, appellant's first assignment of error is also with merit.
 {¶ 43} It is well established that "`[a]lthough violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial.'" State v. Vanek, 11th Dist. No. 2002-L-130, 2003-Ohio-6957, at ¶ 36, quoting State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. Here, the improper evidence clearly supported a fundamental portion of the prosecution's case against appellant. See, e.g., State v. Armstrong, 11th Dist. Nos. 2001-T-0120 and 2002-T-0071,2004-Ohio-5635, at ¶ 114. Thus, the improper introduction of Lynn's testimony and report, in conjunction with Diane's hearsay testimony, had the cumulative effect of depriving appellant of a fair trial.
 {¶ 44} Accordingly, appellant's first, third, and fourth assignments of error are with merit. Appellant's second and fifth assignments of error have been rendered moot. We hereby reverse appellant's convictions on twenty counts of gross sexual imposition and remand this matter for further proceedings consistent with our opinion.
Ford, P.J., O'Neill, j., concur.